UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

Owen Simms

          Petitioner,

    v.

*Pam Bondi*, Attorney General

          Respondents.

_____

PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT
TO 28 U.S.A. §2241

Civ. No.: 25 cv 6458 V

# HABEAS CORPUS

## INTRODUCTION

Petitioner, Owen Simms, hereby petitions this Court for a writ of habeas corpus to remedy his unlawful detention, and to enjoin his continued unlawful detention by the Respondents. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

## PARTIES

1.) Petitioner Owen Simms a lawful permanent resident of the United States, and a native and citizen of Jamaica. He was ordered deported on Febuary 01,2012. On March 22,2024 He has been detained by the Bureau of Immigration and Customs Enforcement (ICE) for over sixtheen (16) months.

2.) Respondent *Pam Bondi* is the Attorney General of the United States and is responsible for the administration of ICE and the implementation and enforcement of the Immigration laws. As such, she is the ultimate legal custodian of the Petitioner.

3.)   Field Office Director  S. Kurzdorfer for Detention and Removal, Buffalo Field Office, Bureau of Immigration and Customs Enforcement, Department of Homeland Security. As such, he is the local ICE official who has immediate custody of the Petitioner.

4.) Department of Homeland Security is the agency charged with implementing and enforcing the immigration laws.

5.) Respondent *and* the Facility Director of the Buffalo Federal Detention Facility in Batavia, New York where Petitioner

is detained and he has immediate custody of the Petitioner.

## CUSTODY

6.) Petitioner is detained at the Buffalo Federal Detention Facility at 4250 Federal Drive, Batavia, New York where immigrant detainees are held. Petitioner is under the direct control of Respondents and all their agents.

## JURISDICTION

7.) This action arises under the Constitution of the United States, and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq*. This Court has jurisdiction under 28 U.S.C. § 2241, Art. I § 9, Cl. 2 of the United States Constitution (Suspension Clause), and 28 U.S.C. § 1331, as the petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. See Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491 (2001).

## VENUE

8.) Venue lies in the Western District of New York because Petitioner is currently detained at the Buffalo Federal Detention Facility. Venue in the Western District of New York is also proper because Petitioner is in the custody of Interim Field

Office Director of Buffalo, which encompasses the area where
Petitioner is detained. 28 U.S.C. § 1391.


## EXHAUSTION OF REMEDIES

9.) Petitioner has exhausted his administrative remedies to
the extent required by law, and his only remedy is by way of this
judicial action. After the Supreme Court decision in <u>Zadvydas</u>,
the Department of Justice issued regulations governing the
custody of aliens ordered removed. See 8 C.F.R. §241.4. On March
22,2024 Mr. Simms was taken in to custody from NYSDOC. At his
"90-day" custody review on  June,of 2024, ICE decided to continue
his detention. In his 180 days review a decision dated on
September of 2024, from ICE's Headquarters Post-Order Detention
unit (HQPODU) informed Petitioner that it would continue to keep
him in custody. *see* Exhibit(A) The custody review regulations do
not provide for appeal from a HQPODU custody review decision. *See*
8 C.F.R. §241.4(d).

10. No statutory exhaustion requirements apply to Petitioner's
claim of unlawful detention.


## STATEMENT OF FACTS

A.   *Background*

11.) Petitioner,(Mr. Simms], was born in Montego Bay,
Jamaica on August 19,1974. Mr. Simms came to the United States on
April 26,1995 as a Lawful permanent Resident. Petitioner lived

with his Aunt Janet Simms, who's an citizen of America. Petitioner Mother Ms.Patsie Blackwood and his rest of his families thru out America are citizen as well .

12.) Petitioner was ordered removed because of his charges on his Notice To Appear for sales of Marihuana in the Fourth degree possession inthe fifth degree which are vacated, sealed, expunged, and terminated. Criminal Court order and immigration judge's decision..

13.) On Febuary of 2012 an immigration judge entered an administrative order to have Petitioner removed from the United States to Jamaica and the BIA affirmed this decision. On January 03,2025  immigration judge Granted withholding of removal under the Convention Against Torture. Currently his final order is not valid.

14.) On Febuary 03,2025 D.H.S appealed IJ decision to Board of immigration of appeal. Recently on August 22,2025 BIA dismissed the Apppeal. See Exhibit (A)

15.) Petitioner was released from New York State Department of Correctional Services into ICE custody on March 0f,2024 where he is detained at the Buffalo Federal Detention Facility. He has cooperated fully with all efforts by ICE to expedite his removal  from the United States to Jamaica. Although Petitioner's order of removal became void, Petitioner has yet to receive any travel documents from the Jamaican consulate.

16.) Petitioner has been in detention for over 15 months.

After receiving a final removal order ICE has been unable to carry out his removal. Petitioner's consulate has not issued travel documents and there is no certainty as to when, if ever, such papers will be issued. Thus, Petitioner's removal from the United States is not likely to occur within the reasonable foreseeable future. See Habtegaber v. Jenifer, 256 F. Supp. 2d 692, 697-98 (E. D. Mich. 2003) (Ethiopian national ordered released after 7 months detention where neither Ethiopia nor Eritera responded to INS's request for travel documents); Okwilago v. Immigration & Naturalization Service, No. 3-01-CV-1416-BD, 2002 WL 356758, *3 (N.D. Tex. Mar. 1, 2002. The Court explained that the intrest 1226(c)- detained noncitizen hold is the most significant liberty interest there is-the interest in being free from imprisonment. Black, 103 F.4th at 151 (quoting 1226(c)Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir.2020). The Court noted that noncitizendetained under 8 U.S.C § 1226(c) possess the same liberty interest as noncitizens detained under any other statute. see id. And, it highlighted that 1226(c)-detained noncitizens lack any administrative mechanisms by which they could challenge their detention. see id. Here, because Mr. Simms has been detained in civil immigration detention since on or about March of 2024, Mr.Simms, too, possesses the same liberty interest as Black and GM. In Black Court found that there is a high risk of erroneous deprivation of rights for 1226(c)-detained noncitizens because there are almost nonexistent procedural

protections in place for section 1226(c) detainees[.] *id. at 152*.
The Court observed that while 1226(c)-detained noncitizens
possess due process protections in other adjacent domains-such as
the ability to ask for matter of joseph hearings, which resolve
whether they may be subjected to mandatory detention--those
mechanisms are insufficient in covering over the deficient
processes noncitizens possess for requesting their actual
release. see id. The Court thus concluded that 1226(c)-detained
noncitizen are faced with even higher risk[s] of erroneous
deprivation of their private liberty interests than 1226(a)-
detained noncitizens. see *id*. Here Mr. Simms has not recieved any
mechanism that would ensure an impartial adudication of his
continued detention. Rather, the only review of Mr. Simms of
continued detention has been by ICE. therefore, Mr.Simms risk of
erroneous deprivation id thus markedly high. The second Circuit
determined that the competing government intrest in preventing a
1226(c)-detained noncitizen from receiving a bond hearing is
 minimal. The Court outlined that the government possesses two
primary interests in denying mandatorily-detained noncitizens
 from receiving a bond hearing at this stage: ensuring the
noncitizen's appearance at proceedings and protecting the
community from danger. *see id*. at 153-54. The court however,
indicated these intrests are not undercut by the relief Mathews
provides in a procedural sense. It assessed at any ordered bond
hearing, the IJ would assess on an individualized basis whether

the noncitizen detainees. *Id.* Since the procedural protection that
flows out of the first two *mathews* factors does not overburden
the government's interest at the third factor, the court found
relief reasonable and necessary.

17. In <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), the Supreme
Court held that six months is the presumptively reasonable period
during which ICE may detain aliens in order to effectuate their
removal, <u>id</u>. at 702. Interim administrative regulations also
recognize that the HQPDU has a six-month period for determining
where there is a significant likelihood of an alien's removal in
the reasonable foreseeable future, 8 C.F.R. §241.13(b)(2)(ii).

<center>LEGAL BACKGROUND</center>

18. Section 236(c) of the Immigration and Nationality Act,
as amended, provides that "the attorney General shall take into
custody any alien who" is removable from this country because he
has been convicted of one of a specified set of crimes.
The statute requires the Department of Homeland Security to take
into custody any alien who "is deportable" from the United States
based on having been convicted of any of a wide range of crimes.
Petitioner drugs crimes and charges on his N.T.A are
vacated, sealed, expunged, and Terminated. see Exhibit (c)

19. Petitioner was convicted of sales of Marihanna inthe
fourth degree. Even though the crimes were not aggravated
felonies/ CTM's, it is respectfully submitted that INA §236(c)
and other mandatory detention statutes are deemed

unconstitutional by a majority of courts. See Hoang v. Comfort, 282 F. 3d 1247 (10th Cir. 2002); Patel v. Zemski, 275 F. 3d 299 (3d Cir. 2001).

20. While it is established that inadmissible aliens or those subject to exclusion orders do not enjoy due process rights under the Fifth Amendment of the United States Constitution, several district courts have affirmed that courts have the power and responsibility to review the government's exercise of detention in cases involving inadmissible aliens. See Zadvydas v. Davis, 121 S. Ct. 2491, 2501 (2001) ("Aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law," quoting Shaughnessy v. United States ex rel Mezei, 345 U. S. 206, 212 (1953)). See also Clark v. Martinez, 125 S. Ct. 716, 160 L. Ed. 29 734, 73 ULLW 4100 (U.S. 2005).

21. Although Petitioner is not subject to a final order anymore the removal and his detention is prolonged. The Supreme Court's decision in Zadvydas that removable and excludable aliens are situated differently before an order of removal is entered. The Court went on to hold that both removalbe and inadmissible aliens are entitled to be free from detention that is arbitrary and capricious. The Court stated that six months was the maximum period of post order detention that was presumptively reasonable given the alien's fundamental liberty interest, Zadvydas, 533 U.

S. at 692.

22. The Court in Patel v. Zemski, 275 F. 3d 299 (3d Cir. 2001) also stated that under Zadvydas immigration detention implicates a fundamental liberty interest and that the INS is limited to a "period reasonably necessary to bring about the alien's removal generally no more than six month," id at 209 citing Zadvydas, 533 U. S. at 692. Additionally, the Code of Federal Regulations recognizes that the Service's Headquarters Post-Order Detention Unit (HQPODU) must make a determination within a six month period as to whether there is a significant likelihood that the alien can be removed from the United States in the reasonably foreseeable future. See 8 C.F.R. §241.13(b)(2) (ii). Presumptive reasonable time established by the Supreme Court. Such prolonged detention is arbitrary and capricious since Petitioner's removal to Jamaica is not likely to occur in the reasonable foresseable future.

23. Prior to the Supreme Court's decision in Zadvydas, courts in the third circuit determined that aliens are not subject to prolonged post-oder detention. See Chi Thon Ngo v. INS, 192 F. 3d 390 (3rd Cir. 1999) ("Stakes are high and we emphasize that grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens"). In Chi Thon Ngo, the court found that the statue satisfied due process because it provided for "searching periodic reviews" of the basis for detention but granted the petitioner's writ of

habeas corpus since he had not received the "rigorous reviews of his eligibility for parole that due process requires," _id_ at 399.

24. Following _Zadvydas_, the Attorney General promulgated regulations establishing a process for determining the custody of aliens subject to prolonged detention awaiting execution of a removal order, see 8 C.F.R. §241.13, which applies to aliens such as Petitioner "who are subject to a final order of removal and are detained under the custody review procedures provided at section §241.4 after the expiration or removal period. "Section 241.13 tracks _Zadvydas_'s mandate in that it requires a deportable alien to first establish a basis that removal in the 'reasonably foreseeable future' is not possible," _Jabir v. Ashcroft_, No. CIV.A.03-2480, 2004 WL 60318, at 85 (E.D. La. Jan. 8, 2004).

25. A non-citizen who is detained may trigger HQPODU review of whether there is a significant likelihood of removal in the reasonably foreseeable future by written request, 8 C.F.R. § 241.13(d). The HQPODU must respond to such a request within ten business days, acknowledge the request, and explain the process that will be followed to consider the request, 8 C.F.R. § 241.13(e)(1). The HQPODU must assess the detainee's cooperation with removal efforts in addition to factors such as the history of ICE's "efforts to remove aliens to the country in question of third countries, . . . the ongoing nature of efforts to remove this alien,  . . . the reasonably foreseeable results of those efforts, the views of the Department of State regarding the

prospects of removal of aliens to the country or countries in question, and the receiving country's willingness to accept the alien into its territory," 8 C.F.R. §241.13(f). According to the regulations, while "there is no presumptive period of time within which the alien's removal must be accomplished, . . . the prospects of the timeliness of removal must be reasonable under the circumstances," 8 C.F.R. §241.13(g). If HQPODU determines that there is no significant likelihood that the alien will be removed in the reasonable foreseeable future, the alien is to be released, upon appropriate conditions, unless "special circumstances" exist, 8 C.F.R. §241.13(g)(1).

26. Special circumstances allowing the continued detention of non-citizen who are subject to removal but unlikely to be removed in the reasonably foreseeable future include those who pose a special safety risk to the public, in the sense that they carry contagious diseases, 8 C.F.R. §241.14(b); pose serious adverse foreign policy consequences, 8 C.F.R. §241.14(c); are being detained because of anti-terrorism concerns, 8 C.F.R. § 241.14(d); or have been determined to be "specially dangerous," either because of the alien's criminal record or by virtue of mental illness, 8 C.F.R. §241.14(f).

27. In the instant case, Petitioner had not received a "searching periodic review" of his custody status. ICE has never asserted that special circumstances exist to justify Petitioner's prolonged detention, or that Petitioner poses a danger to

national security or that he's a flight risk. Thus, Petitioner alleges that his detention violates both substantive and procedural due process insofar as ICE has failed to conduct a periodic review of his status in accordance with its own procedures and has made no determination that he posed either a danger to society or a flight risk.

28. This Court should grant Petitioner's writ of habeas corpus because the government has failed to acknowledge its compliance with all of the obligations of his detention or provide another valid reason for his continued detention, and his unjustly prolonged detention deprives Petitioner of his liberty, see Chi Thon Ngo, 192 F. 3d at 393. There is no justifiable reason for his continued detention. Since Petitioner's detention has continued beyound the six-month post removal order period, his continued detention should be deemed an unlawful deprivation of his liberty, see Zadvydas, 522 U. S. 678.

29. Petitioner further contends that his prolonged detention without the possibility of bond violates the United States Constitution. Petitioner respectfully requests that this honorable court consider as persuasive authority the decision of the United States Court of Appeals for the Third Circuit with respect to the application of the time limiting provision of 8 U.S. C. §1226 as preventing the prolonged detention of inadmissible or excludable aliens, see Patel v. Zemski, 275 F. 3d 299 (3d Cir. 2001) (holding that mandatory detention of aliens

after they have been found subject to removal violates their due process rights unless they have been afforded the opportunity for an individualized hearing at which they can show that they do not pose a flight risk or danger to the community); Chi Thon Nog v. INS, 192 F. 3d 390, 398 (3d Cir. 1999) (same).

## FIRST CLAIM FOR RELIEF

30. Petitioner re-alleges and incorporates by reference paragraphs 1 through 29 as is set forth fully herein.

31. The government is illegally detaining Petitioner because he has been in custody for over 15 months and he will not be able to be removed to Jamaica in the reasonably foreseeable future.

32. Petitioner's continued detention by Respondent is unlawful and contravenes 8 U. S. C. §1231(a)(6) as interpreted by the Supreme Court in Zadvydas. The six month presumptively reasonable period for removal efforts has expired. Petitioner still has not been removed and he continues to languish in detention. Petitioner's removal to Jamaica or any other country is not significantly likely to occur in the reasonably foreseeable future. The Supreme Court held in Zadvydas that the ICE's continued detention of someone like Petitioner under such circumstances is unlawful.

33. Petitioner requests that the government show cause why his continued detention is justified.

## SECOND CLAIM FOR RELIEF

34. Petitioner re-alleges and incorporates by reference paragraphs 1 through 33 above as set forth herein.

35. Petitioner alleges that in light of the equities in this case, his prolonged detention more than six months violates his right to substantive due process under the Fifth Amendment of the United States Constitution.

36. The Due Process Clause of the Fifth Amendment requires that the deprivation of Petitioner's liberty be narrowly tailered to serve a compelling government interest. While respondents would have an interest in detaining Petitioner in order to effectuate removal, that interest does not justify his indefinite detention. Zadvydas recognized that ICE might continue to detain aliens only for a period reasonably necessary to secure the alien's removal. The presumptively reasonable period during which ICE may detain an alien is only six-months. Petitioner has already been detained in excess of six months and his removal is not significantly likely to occur in the reasonably foreseeable future.

THIRD CLAIM FOR RELIEF

37. Petitioner re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 36 as set forth fully herein.

38. Petitioner alleges that in light of the equities in this case, his prolonged detention more than six months without a

meaningful review of his detention in accordance with federal regulations violates his right to procedural due process under the Fifth Amendment of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Honorable Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Issue an order requiring respondents to promptly release Petitioner because there is no likelihood that he will be removed to Jamaica in the reasonably foreseeable future;

3) Order the Attorney General and his agents not to remove Petitioner from the jurisdiction of this Court during the duration of the consideration of this petition.

4) Grant any other and further relief that this Court deems just and proper.

I affirm, under penalty of perjury, that the foregoing is true and correct. Respectfully submitted this date on August 28, 2025.

*Owen Simms*

Owen Simms A#044-847-829
Pro-se Litigant
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, New York 14020

# CERTIFICATE OF SERVICE

I, Owen Simms A#044-847-829, hereby depose and say, that on 08/28/2025, I enclosed inside a United States Postal service Box/ Envelope, sent a true and certified copy of HABEAS CORPUS Statement Pursuant to 28 U.S.C & 1746, i Declare, under the penalty of Perjury under the laws of the United States of America, and handed the following documents to the authority of Buffalo Federal detention facility (BFDF) staff for mail and delivery. The foregoing is true and correct to the other party.

Located at the following address:

Kenneth B. Keating Federal Building
100 State Street Room 2120
Rochester, New York 14614

Sworn to before me this _2_

day of _OQ_ ,20_25_.

_Aaron A Stahl_
Notary

Respectfully Submitted,

_Owen Simms_
Owen Simms  Pro-se
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 1402

Aaron A. Stahl
Notary Public, State of New York
Reg. No. 01ST0013537
Qualified in Orleans County
Commission Expires September 14, 2027

# CERTIFICATE OF SERVICE

I, Owen Simms A#044-847-829, hereby depose and say, that on 08/28/2025. I enclosed inside a United States Postal service Box/ Envelope, sent a true and certified copy Motion To Proceed in Forma Pauperis. Statement Pursuant to 28 U.S.C & 1746, i Declare, under the penalty of Perjury under the laws of the United States of America, and handed the following documents to the authority of Buffalo Federal detention facility (BFDF) staff for mail and delivery. The foregoing is true and correct to the other party.

Located at the following address:

Kenneth B. Keating Federal Building
100 State Street, Room 2120
Rochester, New York 14614

Sworn to before me this *02*

day of *09* ,20*25*.

*Aaron A. Stahl*
Notary Public

Respectfully Submitted,

*Owen Simms*
Owen Simms  Pro-se
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 1402

Aaron A. Stahl
Notary Public, State of New York
Reg. No. 01ST0013537
Qualified in Orleans County
Commission Expires September 14, 2027

# CERTIFICATE OF SERVICE

I, Owen Simms A#044-847-829, hereby depose and say, that on 08/28/2025. I enclosed inside a United States Postal service Box/ Envelope, sent a true and certified copy of Motion for Appointment of Counsel. Statement Pursuant to 28 U.S.C & 1746, i Declare, under the penalty of Perjury under the laws of the United States of America, and handed the following documents to the authority of Buffalo Federal detention facility (BFDF) staff for mail and delivery. The foregoing is true and correct to the other party.

Located at the following address:


Kenneth B. Keating Federal Building
100 State Street, room 2120
Rochester, New York 14614




Sworn to before me this _02_

day of _OA_ ,20_25_.


_Aaron A Stahl_
Notary Public

Respectfully Submitted,

_Owen Simms_
Owen Simms Pro-se
Buffalo Federal Detention Facility
4250 Federal Drive
Batavia, NY 1402


Aaron A. Stahl
Notary Public, State of New York
Reg. No. 01ST0013537
Qualified in Orleans County
Commission Expires September 14, 2027

# *Exhibits* (A)

BIA Decision



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*



SIMMS, OWEN OLIVER
A 044847829
BUFFALO FEDERAL DETENTION FAC
4250 FEDERAL DRIVE
BATAVIA NY 14020

DHS/ICE Office of Chief Counsel - BTV
4250 Federal Dr.
Batavia NY 14020

Name: SIMMS, OWEN OLIVER          A 044-847-829

Date of this Notice:   8/22/2025

Enclosed is a copy of the Board's decision in the above-referenced case. If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of this decision.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam: Docket

### NOT FOR PUBLICATION

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Owen Oliver SIMMS, A044-847-829

Applicant

<div style="border">

**FILED**

Aug 22, 2025

</div>

ON BEHALF OF APPLICANT: Pro se

ON BEHALF OF DHS: Michael G. Dreher, Assistant Chief Counsel

IN WITHHOLDING ONLY PROCEEDINGS
On Appeal from a Decision of the Immigration Court, Batavia, NY

Before: Gemoets, Temporary Appellate Immigration Judge[1]

GEMOETS, Temporary Appellate Immigration Judge

On June 3, 2024, we remanded this case to the Immigration Judge for further consideration of the applicant's application for withholding of removal under the regulations implementing the Convention Against Torture ("CAT").[2,3] *See* 8 C.F.R. §§ 1208.16(c)-1208.18 (2020). The Department of Homeland Security ("DHS") now appeals the Immigration Judge's January 3, 2025, decision on remand ordering the applicant removed to Jamaica but granting his application for withholding of removal under the CAT. The applicant did not respond to the appeal. The appeal will be dismissed.

We review the findings of fact, including the determination of credibility, made by the Immigration Judge under the "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including issues of law, discretion, or judgment, under the de novo standard. 8 C.F.R. § 1003.1(d)(3)(ii).

---

[1] Temporary Appellate Immigration Judges sit pursuant to appointment by the Attorney General. *See generally* 8 C.F.R. § 1003.1(a)(1), (4).

[2] An immigration officer has ordered the applicant removed from the United States under the provisions of section 241(a)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(5), and referred him to the Immigration Judge for "withholding only" proceedings under the provisions of 8 C.F.R. § 1208.31(e).

[3] The Convention Against Torture and Other Cruel Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).

A044-847-829

After the applicant was removed to Jamaica in 2012, he alleged that he refused the request of a former schoolmate named Ritchie, who served as a leader of the Big Yard gang, to join a defrauding scheme known informally as a "lottery scam" (IJ at 5-6; Tr. at 75-79, 157-65; Exh. 2.1). In 2014, the applicant was attacked by Ritchie and his associates with machetes (IJ at 6; Tr. at 77, 81-83, 165-72; Exh. 2.1). Consequently, he had two surgeries and now takes daily seizure medication (IJ at 6; Tr. at 173-76; Exh. 2.1). The Immigration Judge granted the applicant's application for withholding of removal under the CAT because he determined that the applicant, who testified credibly, will more likely than not be tortured by Ritchie, Ritchie's associates, lottery scammers, and/or the Jamaican police with the acquiescence of a Jamaican public official or person acting in an official capacity (IJ at 4, 6). On appeal, DHS argues the Immigration Judge relied upon unreliable testimony to support his finding that the Jamaican police would acquiesce to the applicant's torture by criminal gangs (DHS' Br. at 5-9). DHS also argues that the Immigration Judge should have required the applicant to provide reasonably available corroborating evidence to support his unreliable testimony (DHS' Br. at 10-13).

On review, we discern no clear error in the Immigration Judge's credibility finding and decline to disturb his decision granting relief. *See* 8 C.F.R. § 1003.1(d)(3)(i). The Board may not overturn the highly deferential credibility determination of an Immigration Judge simply because a party would have weighed the evidence or decided the facts differently. Rather, the Board must affirm those factual findings if they are a permissible view of the record. *See Cooper v. Harris,* 581 U.S. 285, 293 (2017) ("A finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern.") (*citing Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574 (1985)).

The Immigration Judge found that the applicant's witness, Patricia, testified credibly at the first merits hearing in May 2019 and sufficiently corroborated her testimony (IJ at 4; Tr. at 59-137; Exh. 3.1). The Immigration Judge found that the applicant testified credibly at the second merits hearing in May 2019 and third merits hearing in December 2024, the latter at which he appeared pro se, and sufficiently corroborated his testimony (IJ at 4; Tr. at 151-239, 68-126; Exhs. 2.1, R-2). An applicant's credible testimony is sufficient to sustain his burden of proof without corroboration. 8 C.F.R. § 1208.16(c)(2); *see also Urgen v. Holder,* 768 F.3d 269, 272-273 (2d Cir. 2014) (reaffirming that an applicant can meet his burden of proof based solely on credible testimony). To further support the applicant's claim, the applicant and his witness provided corroborating evidence including personal statements and country conditions evidence (Exhs. 2.1, 3.1, 4, 6). For the remanded proceedings, the applicant submitted updated country conditions articles as well as photographs and burial information for several individuals, including family members, who he claims were killed as a result of refusing to share information about him (IJ at 9; Tr. at 94-113; Exh. R-2). After questioning the applicant about this submission, and noting DHS' lack of objection to it, the Immigration Judge admitted all of the documents (IJ at 3 n.3; Tr. at 62-64, 94-113, 125; Exh. R-2). DHS now contends that the applicant and his witness should have provided corroborating evidence, including updated statements, to explain any ongoing threats (DHS' Br. at 11). However, as the Immigration Judge found that both the applicant and his witness provided credible testimony, and we uphold that determination, we discern no error in his decision not to require additional corroboration beyond what he deemed was sufficient (IJ at 4). 8 C.F.R. § 1208.16(c)(2); *see also Wei Sun v. Sessions,* 883 F.3d 23, 28 (2d Cir. 2018).

A044-847-829

The DHS contends that the Immigration Judge erroneously determined that the absence of the police during the June 2014 attack on the applicant constituted acquiescence (DHS' Br. at 6). Specifically, DHS asserts the Immigration Judge did not analyze the contradiction that police officers patrolled the market where the applicant was attacked every 5 minutes, and the attack lasted longer than five minutes, with the applicant's testimony that he could not estimate how long the attack took and had never seen the police in that particular area (IJ at 7; Tr. at 165-73, 179-180, 224-25; DHS' Br. at 6). However, the Immigration Judge also considered the credible statement and testimony of the applicant's witness, Patricia, who was present on the day of the attack (IJ at 7; Exh. 3.1). The Immigration Judge cited to her statement in finding that the market police would patrol the market approximately every 5 minutes (IJ at 7; Exh. 3.1). Though the Immigration Judge found that the attack took longer than five minutes per the applicant's account, the record reveals that this was Patricia's testimony (IJ at 7; Tr. at 109). The Immigration Judge's finding is clearly erroneous. However, the applicant did not contradict himself as he maintained that he did not know the duration of the attack and that he had not seen police in his area of the market (IJ at 7; Tr. at 179-81, 222-25). The Immigration Judge properly considered the absence of police during the attack as part of his overall acquiescence determination (IJ at 7, 9-11).

The DHS further contends that the Immigration Judge placed undue reliance on Patricia's testimony about the danger posed by a police officer named Mark (DHS' Br. at 6). The Immigration Judge found that Patricia gave a statement to the police, and the interviewing officer wrote a report and gave her a receipt for it (IJ at 6-7; Exhs. 3.1, 4 at Tab D). In order to check the status of the report, Patricia made approximately 20 calls and multiple visits to the police station (IJ at 7; Tr. at 77). During one station visit, Patricia met her police officer friend, Mark, who told her to "leave it alone" (IJ at 8; Tr. at 77; Exh. 3.1). The Immigration Judge who conducted the applicant's 2019 merits hearings found this testimony unconvincing as to whether the police were working with the scammers and, hence, acquiesced in the applicant's torture (IJ Order at 9, June 14, 2019). DHS contends that the Immigration Judge who granted the application for relief offered no reason for undercutting this analysis by finding that Mark's statement was a threat towards Patricia made possible because he was clothed with the authority of law (IJ at 8; DHS' Br. at 7). *See Matter of O-F-A-S-*, 28 I&N Dec. 35, 40 (A.G. 2020) (holding that the "under color of law" standard draws no distinction between the acts of low and high-level officials). However, the Immigration Judge's finding that Mark's comment constituted a threat was a reasonable inference from the record (IJ at 8; Tr. at 77; Exh. 3.1). *See Siewe v. Gonzales*, 480 F.3d 160, 167-68 (2d Cir. 2007) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (internal quotations omitted); *see also Matter of M-A-M-Z-*, 28 I&N Dec. 173, 177 (BIA 2020) ("Clear error exists only where the Immigration Judge's findings are illogical or implausible, or without support in inferences that may be drawn from the facts in the record.") (internal quotations omitted).

The DHS also challenges the Immigration Judge's finding that Richie and his associates would target the applicant to kill him (IJ at 8-9; DHS' Br. at 7-8). The Immigration Judge found threats against the applicant continued once these individuals learned from a taxi driver that he was still alive and in Jamaica following the 2014 attack (IJ at 8-9; Tr. at 86-87; Exhs. 2.1, 3.1). DHS contends that the record actually shows that Patricia learned of the threat through an extended

A044-847-829

chain of communication that is too attenuated to accept as the only evidence of ongoing threats against the applicant (Tr. at 87; DHS' Br. at 7-8). However, a review of Patricia's statement and testimony reveals that the gang learned of the applicant's whereabouts through a taxi driver and, in turn, Patricia learned this information through the chain of communication (IJ at 9; Tr. at 86-87; Exh. 3.1). Additionally, the Immigration Judge found, and DHS does not contest, that the applicant's and Patricia's family members have been targeted and killed by Richie's friends when they refused to share information about the applicant (IJ at 9; Tr. at 94-109; Exh. R-2).

Regarding country conditions evidence, DHS contends that the Immigration Judge erred in relying upon the applicant's nonresponsive testimony rather than the well-documented actions taken by the Jamaican government aimed at combatting general criminal activity and activity by Richie (DHS' Br. at 8-9). The Immigration Judge did acknowledge and meaningfully consider efforts by the Jamaican government to combat and address gang violence and fraud resulting from lottery scams (IJ at 10; Exh. 4). Such efforts include the government declaring State of Emergencies to address organized crime violence, the government working with the United States to extradite Jamaican lottery scammers, specific efforts to question both Richie and another individual, Raceen, for their roles in violence, and evidence the murders of specific individuals killed by Richie's friends were investigated (IJ at 10; Exhs. 3.1, 4, R-2).

In his acquiescence finding, the Immigration Judge did not err in considering the applicant's belief about the police collaborating with the criminal elements along with country condition evidence of serious government corruption in Jamaica (IJ at 10-11; Tr. at 90; DHS' Br. at 8-9). Despite his findings that the Jamaican government has announced and followed through with some anti-gang violence initiatives, his additional findings about such corruption and the lack of investigation regarding the respondent's circumstances further supports the acquiescence determination. *See De La Rosa v. Holder*, 598 F.3d 103, 110 (2d Cir. 2010) (the fact that "some" officials take action to prevent torture is not enough to preclude a finding of government acquiescence where the "government contains officials that would be complicit in torture, and that the government, on the whole, is admittedly incapable of actually preventing that torture"); *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592 (2d Cir. 2021). Specifically, the Immigration Judge found that many police officers have been arrested for profiting from the fraudulent lottery scams (IJ at 10; Exh. R-2). Though the law provided criminal penalties for corruption by officials, the law was not effectively implemented and corruption remains widespread, even among senior government officials (IJ at 10; Exh. R-3). Further, there are historical ties between organized crime leaders and government officials, and the record of prosecuting corruption cases against law enforcement is poor (IJ at 10; Exh. R-3). The Immigration Judge also found that United States officials have claimed that Jamaican local police do not "respond effectively" to serious crimes (IJ at 10; Exh. R-2).

Based on the foregoing, we will affirm the Immigration Judge's grant of the applicant's request for withholding of removal under the CAT. 8 C.F.R. § 1208.16(c). The Immigration Judge properly assessed the factors that are relevant to the possibility of future torture per 8 C.F.R.

A044-847-829

§ 1208.16(c)(3)(i)-(iv) including evidence of past torture and internal relocation.[4] *See Garcia-Aranda v. Garland*, 53 F.4th 752, 759-60 (2d Cir. 2022). Though DHS disagrees with his view of the evidence, the Immigration Judge also properly determined that sufficient state action would be involved in the applicant's likely future harm. *Id.* at 759; 8 C.F.R. § 1208.18(a)(7). Because DHS has not reported the results of completed or updated identity, law enforcement, or security investigations or examinations to the Board pursuant to 8 C.F.R. § 1003.1(d)(6)(ii).

Accordingly, the following orders will be entered.

ORDER: The Department of Homeland Security's appeal is dismissed.

FURTHER ORDER: We affirm the Immigration Judge's grant of relief.

NOTICE TO RESPONDENT/APPLICANT TO CONTACT DHS/USCIS: The Board of Immigration Appeals has issued a final decision in your case. Depending on the type of relief or protection from removal that you have been granted, you may be entitled to documents evidencing your status allowing you to remain in the United States or you may be eligible to work in this country. However, in order to receive any documentation, you need to contact the U.S. Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security, which is the agency responsible for the issuance of documents evidencing your status and/or work authorization. Information regarding the specific USCIS instructions can be found at www.uscis.gov (search "Post-Order Instructions" or "Notice to Individuals Granted Immigration Benefits by an Immigration Judge or the Board of Immigration Appeals") on procedures for obtaining status documentation or work authorization. Additionally, the Executive Office for Immigration Review ("EOIR") website at www.justice.gov/eoir contains a link to the USCIS webpage which in turn links to the "Post Order Instructions." You may also call the USCIS national customer service number at 1-800-375-5283.

NOTICE: If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the Immigration and Nationality Act, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).

---

[4] The Immigration Judge found, and DHS does not contest, that the applicant cannot relocate within Jamaica (IJ at 11). 8 C.F.R. § 1208.16(c)(3)(ii).

5

# *Exhibits* (B)

N.T.A and Immigration Judge's order and decision

U.S. Department of Homeland Security

# Notice to Appear

## In removal proceedings under section 240 of the Immigration and Nationality Act:

| Subject ID : 341009773 | FIN #: 1087714135 | File No: A044 847 829 |
|---|---|---|
| | DOE: 08/19/1974 | Event No: CHM1109000166 |

In the Matter of:
**Owen Oliver SIMMS**

Respondent: _____ currently residing at:

**543 E. 21ST STREET , BROOKLYN NEW YORK 11226**                   **(347) 238-4410**

                       (Number, street, city and ZIP code)                  (Area code and phone number)

[X] 1. You are an arriving alien.

[ ] 2. You are an alien present in the United States who has not been admitted or paroled.

[ ] 3. You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:
      **See Continuation Page Made a Part Hereof**

"EXHIBIT  1 "

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:
      **See Continuation Page Made a Part Hereof**

[ ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

[ ] Section 235(b)(1) order was vacated pursuant to: [ ] 8CFR 208.30(f)(2) [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
**4250 Federal Drive Room F106 Batavia NEW YORK 14020 to be set**

                    (Complete Address of Immigration Court, including Room Number, if any)

on **a date to be set** at **a time to be set** to show why you should not be removed from the United States based on the
     (Date)          (Time)

charge(s) set forth above.
             **WESLEY PARSONS**     **Chief Officer**

                    (Signature and Title of Issuing Officer)

Date: **September 21, 2011**     **Champlain, NY**

                    (City and State)

**See reverse for important information**      Form I-862 (Rev. 08/01/07)

### Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to one of the offices listed in 8 CFR 241.16(a). Specific addresses on locations for surrender can be obtained from your local DHS office or over the internet at http://www.ice.gov/about/dro/contact.htm. You must surrender within 30 days from the date the order becomes administratively final, unless you obtain an order from a Federal court, immigration court, or the Board of Immigration Appeals staying execution of the removal order. Immigration regulations at 8 CFR 241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Act.

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to a 10-day period prior to appearing before an immigration judge.

Before: _____

_____
*(Signature of Respondent)*

Date: _____

_____
*(Signature and Title of Immigration Officer)*

### Certificate of Service

This Notice To Appear was served on the respondent by me on **September 21, 2011**, in the following manner and in compliance with section 239(a)(1)(F) of the Act.

[X] in person    [ ] by certified mail, returned receipt requested    [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the **ENGLISH** language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____
*(Signature of Respondent if Personally Served)*

JASON BRAULT    Enforcement officer

_____
*(Signature and Title of officer)*

U.S. Department of Homeland Security      Continuation Page for Form ___1862___

| Alien's Name<br>Owen Oliver SIMMS | File Number<br>A044 847 829<br>Event No: CHM1109000166 | Date<br>September 21, 2011 |
|---|---|---|

THE SERVICE ALLEGES THAT YOU:
==================================
1. You are not a citizen or national of the United States;
2. You are a native of JAMAICA and a citizen of JAMAICA;
3. You were an applicant for admission at the Rouses Point, NY rail station on September 21, 2011 as a   returning resident, Category: F12.
4. You were convicted of the crime of Criminal Possession of Marijuana in the Fifth Degree, in violation of Section 221.10 of the New York State Penal Law, pursuant to a judgment entered on April 22, 1998 in the Criminal Court of the City of New York, County of Bronx, under docket number 98X010388;
5. You were convicted of the crime of Criminal Sale of Marijuana in the Fourth Degree, in violation of Section 221.40 of the New York State Penal Law, pursuant to a judgment entered on August 28, 1998 in the Criminal Court of the City of New York, County of Kings, under docket number 98K071543;
6. You were convicted of the crime of Criminal Sale of Marijuana in the Fourth Degree, in violation of Section 221.40 of the New York State Penal Law, pursuant to a judgment entered on April 12, 1999 in the Criminal Court of the City of New York, County of Kings, under docket number 99K014658;
7. You were convicted of the crime of Attempted Criminal Possession of Marijuana in the Fifth Degree, in violation of Section 110-221.10 of the New York State Penal Law, pursuant to a judgment entered on May 3, 2000 in the Criminal Court of the City of New York, County of Kings, under docket number 2000KN034901;
8. You were convicted of the crime of Criminal Possession of Marijuana in the Fifth Degree, in violation of Section 221.10 of the New York State Penal Law, pursuant to a judgment entered on December 4, 2000 in the Criminal Court of the City of New York, County of Kings, under docket number 2000KN053801;
9. You were convicted of the crime of Criminal Possession of Marijuana in the Fourth Degree, in violation of Section 221.15 of the New York State Penal Law, pursuant to a judgment entered on March 27, 2003 in the Criminal Court of the City of New York, County of Kings, under docket number 2002KN072223;
10. You were convicted of the crime of Attempted Criminal Sale of Marijuana in the Fourth Degree, in violation of Section 110-221.40 of the New York State Penal Law, pursuant to a judgment entered on January 20, 2006 in the Criminal Court of the City of New York, County of Kings, under docket number 2005KN037771;
11. You were convicted of the crime of Criminal Possession of Marijuana in the Fifth Degree, in violation of Section 221.10 of the New York State Penal Law, pursuant to a judgment entered on November 15, 2006 in the Criminal Court of the City of New York, County of Kings, under docket number 2006KN052960;
12. You were convicted of the crime of Criminal Possession of Marijuana in the Fourth Degree, in violation of Section 221.15 of the New York State Penal Law, pursuant to a judgment entered on February 1, 2007 in the Criminal Court of the City of New York, County of Kings, under docket number 2007KN008759;
13. You were convicted of the crime of Criminal Possession of Marijuana in the Fifth Degree, in violation of Section 221.10 of the New York State Penal Law, pursuant to a judgment entered on October 18, 2007 in the Criminal Court of the City of New York, County of Kings, under docket number 2007KN056246.

...(CONTINUED ON NEXT PAGE)

| Signature<br><br>WESLEY PARSONS | Title<br><br>Chief Officer |
|---|---|

Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security                    Continuation Page for Form ___I862___

| Alien's Name | File Number | Date |
|---|---|---|
| Owen Oliver SIMMS | A044 847 829<br>Event No: CHM1109000166 | September 21, 2011 |

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:
=====================================================================================

Section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act, as amended, in that you are an alien who has been convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act (21 U.S.C. 802)).

Section 212(a)(2)(C) of the Immigration and Nationality Act, as amended, in that a consular or immigration officer knows or has reason to believe you are an alien who is or has been an illicit trafficker in any controlled substance or who is or has been a knowing assister, abettor, conspirator, or colluder with others in the illicit trafficking in any such controlled substance.

| Signature | Title |
|---|---|
| WESLEY PARSONS | Chief Officer |

___4___ of ___4___ Pages

BI - 122A



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
4250 FEDERAL DRIVE, ROOM F108
BATAVIA, NY  14020


SIMMS, OWEN OLIVER
4250 FEDERAL DRIVE
BATAVIA, NY  14020


In the matter of          File A 044-847-829     DATE: Jan 3, 2025
SIMMS, OWEN OLIVER


__ Unable to forward - No address provided.
X  Attached is a copy of the decision of the Immigration Judge. This decision
   is final unless an appeal is filed with the Board of Immigration Appeals
   within 30 calendar days of the date of the mailing of this written decision.
   See the enclosed forms and instructions for properly preparing your appeal.
   Your notice of appeal, attached documents, and fee or fee waiver request
   must be mailed to:   Board of Immigration Appeals
                        Office of the Clerk
                        5107 Leesburg Pike, Suite 2000
                        Falls Church, VA 22041
__ Attached is a copy of the decision of the immigration judge as the result
   of your Failure to Appear at your scheduled deportation or removal hearing.
   This decision is final unless a Motion to Reopen is filed in accordance
   with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
   1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
   1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
   motion must be filed with this court:
                        IMMIGRATION COURT
                        4250 FEDERAL DRIVE, ROOM F108
                        BATAVIA, NY  14020
__ Attached is a copy of the decision of the immigration judge relating to a
   Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
   1208.31(g)(1), no administrative appeal is available. However, you may file
   a petition for review within 30 days with the appropriate Circuit Court of
   Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.
__ Attached is a copy of the decision of the immigration judge relating to a
   Credible Fear Review. This is a final order. No appeal is available.
__ Other: _____


                        _____dmp_____
                        COURT CLERK
                        IMMIGRATION COURT                           FF
     cc: Michael Dreher, Assistant Chief Counsel
         4250 Federal Drive
         Batavia, NY,  14020

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
BATAVIA, NEW YORK

In the Matter of:                          :
                                           :
SIMMS, OWEN OLIVER                         :    IN WITHHOLDING ONLY
                                           :    PROCEEDINGS
A# 044-847-829                             :
                                           :
Applicant.                                 :
                                           :

APPLICATION:    8 C.F.R. § 1208.16(c)              UN Convention Against Torture


**ON BEHALF OF APPLICANT**                  **ON BEHALF OF DHS**
*Pro Se*                                     Michael Dreher, Esq.
                                             Assistant Chief Counsel
                                             Department of Homeland Security
                                             4250 Federal Drive
                                             Batavia, NY 14020


**DECISION AND ORDER OF THE IMMIGRATION JUDGE**

**I.    PROCEDURAL HISTORY**

This matter comes before the Court on remand from the Board of Immigration Appeals ("the Board"). The Court assumes the parties' familiarity with the facts and the procedural history of this case. The transcripts of all prior proceedings are incorporated by reference into this decision.

In summary, the applicant is a native and citizen of Jamaica (Exh. 1). He was previously removed pursuant to an order of removal by the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") on or about November 1, 2012, pursuant to an order issued on or about February 15, 2012 (Exh. 1). The applicant reentered the United States on a date and at a place that is not known to the U.S. Government, and the DHS moved to reinstate the prior removal order (*Id.*). The applicant was referred for a reasonable fear interview, and U.S. Citizenship and Immigration Services ("USCIS") made a positive reasonable fear determination (Exh. 1). On or about February 21, 2019, the applicant was placed in withholding only proceedings

before the New York City Varick Street Immigration Court pursuant to the service and filing of a Form I-863, Notice of Referral to Immigration Judge (*Id.*).

On June 14, 2019, the New York City Varick Street Immigration Court issued an oral decision denying the applicant's application for statutory withholding of removal and withholding of removal under the Convention Against Torture ("CAT"),[1] and ordered the applicant removed to Jamaica. The applicant timely appealed to the Board. On September 1, 2020, the Board dismissed the applicant's appeal of the Immigration Judge's June 14, 2019, decision.

On March 8, 2022, the United States Court of Appeals for the Second Circuit remanded this matter to the Board for further consideration of the applicant's application for protection under the regulations implementing the CAT and "any other issues appropriately raised." *See Simms v. Garland*, No. 20-3321 (2d Cir. Mar. 8, 2022).

On June 3, 2024, the Board remanded the record for the Court to determine whether the applicant met his burden of proving his removal to Jamaica should be withheld under the CAT. In further considering the applicant's application for CAT protection, the Board directed the Immigration Judge to consider that "the preventative efforts of some government actors" does not necessarily "foreclose the possibility of government acquiescence, as a matter of law, under the CAT." *De La Rosa v. Holder*, 598 F.3d 103, 110 (2d Cir. 2010); *Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004); *Matter of O-F-A-S-*, 28 I&N Dec. 35, 40-41 (A.G. 2020) (explaining that the color of law "standard does not categorically exclude corrupt, low-level officials from the CAT's scope").

Following remand to the New York City Varick Street Immigration Court, additional proceedings were held on June 24, 2024, and July 11, 2024. The DHS's motion to change venue to the Batavia Immigration Court was then granted. On August 1, 2024, a master calendar hearing was held at the Batavia Immigration Court before the undersigned Immigration Judge.[2] The Court granted the applicant's counsel's request to withdraw legal representation. On August 15, 2024, September 5, 2024, October 15, 2024, and November 5, 2024, the applicant's removal hearings were continued to allow him the opportunity to seek legal representation. On December 11, 2024, the applicant appeared pro se for an individual merits hearing, where he testified in support of his application for relief.

The applicant's application for statutory withholding of removal is not included in the scope of the Board's remand. As such, the Court need only address his eligibility for withholding of removal under the CAT.

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c)-1208.18.

[2] Pursuant to 8 C.F.R. § 1240.1(b), the signing Immigration Judge has reviewed the record of proceeding and familiarized himself with the record.

2

## II.   EXHIBITS

### A. Documentary Evidence

All exhibits were admitted into the record. The Court has considered all admitted evidence, even if it is not specifically referred to below.

| | |
|---|---|
| Exhibit 1: | Form I-863, Reasonable Fear Interview; Form I-205, Notice of Intent to Reinstate, et cetera |
| Exhibit 2: | Form I-589, Application for Asylum and Withholding of Removal |
| Exhibit 2.1: | Applicant's statement |
| Exhibit 3: | Witness list |
| Exhibit 3.1: | Witness statement |
| Exhibit 4: | Applicant's documents, tabs B - V |
| Exhibit 5: | Bergen County Jail medical records |
| Exhibit 6: | Applicant's documents, tabs W - CC |
| Exhibit 7: | Rap sheet |
| Exhibit 8: | Applicant's documents, tab DD |
| Exhibit A: | Applicant's pre-hearing statement (identification only) |
| Exhibit B: | Motion for late filing and Immigration Judge's Order (identification only) |
| Exhibit C: | Applicant's closing statement (identification only) |
| Exhibit D: | DHS closing statement (identification only) |
| Exhibit R-1: | United States Department of State Country Report on Human Rights Practices for 2023: Jamaica |
| Exhibit R-2: | Applicant's Supplementary Evidence[3] |
| Exhibit R-3: | United States Department of State Bureau for International Narcotics and Law Enforcement Affairs, International Narcotics Control Strategy Report, dated March 2023[4] |
| Exhibit R-4: | Applicant's Certificates of Disposition, filed Dec. 11, 2024 |

### B. Testimony

Because the parties are familiar with the Record of Proceedings including all the testimony which has been recorded, the Court does not completely recount it here.

---

[3] As part of this exhibit, the applicant submitted partial excerpts of 7 articles. To fulfill its duty to develop the record, especially when the applicant is pro se, the Court has included the entirety of each article in the record. *Secaida-Rosales v. INS*, 331 F.3d 297, 306 (2d Cir. 2003), superseded by statute on other grounds as stated in *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 163-64 (2d Cir. 2008); *see also* 8 C.F.R §§ 1240.17(f)(4)(i) and (ii) (referencing an Immigration Judge's duty to develop the record).

[4] The Court takes administrative notice of this report, which was referenced in the United States Department of State Country Report on Human Rights Practices for 2023: Jamaica. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (allowing the Board and, by implication, the Immigration Courts, to take administrative notice of commonly known facts such as current events or the contents of official documents); *see also Matter of S-M-J-*, 21 I&N Dec. 722, 727-30 (BIA 1997) (emphasizing that "Immigration Judges . . . should place general country condition information into evidence" when such evidence is not provided by the parties in order to prevent decisions from being made in an evidentiary "vacuum").

## III.     LEGAL STANDARD AND ANALYSIS

### a.  *Credibility and Corroboration*

In all applications for asylum and related protection, the Court must make a threshold determination of the applicant's credibility. *Matter of O-D-*, 21 I&N Dec. 1079, 1081 (BIA 1998); INA § 208(b)(1)(B)(ii).  The Court may, after considering "the totality of the evidence, and all relevant factors," base a credibility determination on: the applicant's demeanor, candor, or responsiveness; the inherent plausibility of the account; the consistency between oral and written statements; the internal consistency of such statements; the consistency of such statements with evidence of record; and any inaccuracy or falsehood in such statements, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim," or any other factor.  INA § 240(c)(4)(C); *see Diallo v. U.S. Dep't of Justice*, 548 F.3d 232, 234 n.1 (2d Cir. 2008); *Matter of J-Y-C-*, 24 I&N Dec. 260, 266 (BIA 2007).  Testimony is not considered credible when it is inconsistent, contradictory, or inherently improbable. *See Gao v. Barr*, 968 F.3d 137, 146 (2d Cir. 2020).

A credibility finding requires a "twofold determination.  First, the [Court] must determine whether the applicant's testimony is credible . . . .  Second, the [Court] must determine whether the applicant met his or her burden of proof." *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 584 (2d Cir. 2021) (internal citations omitted).  In determining whether the applicant has met their burden of proof, the Court may weigh "credible testimony along with other evidence of record."  INA § 208(b)(1)(B)(ii).  Testimony that is credible, persuasive, and "refers to specific facts sufficient to demonstrate that the applicant is a refugee" may be sufficient to meet this burden absent corroboration.  *See* INA § 208(b)(1)(B)(ii); *see also* 8 C.F.R. § 1208.13(a).

Upon consideration of the record as a whole and all relevant factors, the Court finds the applicant testified credibly on May 27, 2019, and December 11, 2024, and sufficiently corroborated his testimony with objective documentary evidence in the record.  The Court also finds that Patricia Camille Brown, hereinafter referred to as Patricia, testified credibility on May 7, 2019.  The witness' testimony was also sufficiently corroborated by the documentary evidence submitted.  Having found both the applicant and the witness credible, the Court will analyze the merits of the applicant's CAT application.

### a.  *Withholding of Removal under the CAT*

CAT and its implementing regulations provide that no person shall be removed to a country where it is "more likely than not" that he will be subject to torture.  *See* 8 C.F.R. §§ 1208.16, 1208.17, 1208.18.  "Torture" is "an extreme form of cruel and inhuman treatment," defined, in part, as the intentional infliction of severe pain or suffering by, or at the instigation of, or with the consent or acquiescence of a public official.  8 C.F.R. § 1208.18(a)(1)-(2); *see Matter of J-E-*, 23 I&N Dec. 291, 303 (BIA 2002); *Pierre v. Gonzales*, 502 F.3d 109, 115 (2d Cir. 2007).  Analysis of a CAT claim thus involves a two-step inquiry.  *See Garcia-Aranda v. Garland*, 53 F.4th 752, 759-760 (2d Cir. 2022).  First, the applicant must show that, in his particular situation, it is more likely than not that he will be subjected to harm rising to the level of torture as recognized under

8 C.F.R. § 1208.18(a) upon removal. *See id.*; *see also Zelaya-Moreno v. Wilkinson*, 989 F.3d 190, 203-05 (2d Cir. 2021). Generally, this requires a showing that the applicant would be subjected to harm which is intentionally inflicted to intimidate or coerce him or a third person and which causes severe pain or suffering, whether physical or mental. *See Garcia-Aranda*, 53 F.4th at 759; *see also* 8 C.F.R. §1208.18(a)(1). Second, the applicant must show that sufficient state action would be involved in such future harm. *See Garcia-Aranda*, 53 F.4th at 759. State action satisfies the regulatory standard where harm is inflicted by, at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity. *See id.* Acquiescence of a public official requires that the official have awareness of or remain "willfully blind" to the activity constituting torture prior to its commission, and thereafter breach his or her legal responsibility to intervene to prevent such activity. 8 C.F.R. § 1208.18(a)(7); *Khouzam v. Ashcroft*, 361 F.3d at 171. However, the fact that "some" officials take action to prevent torture is not enough to preclude a finding of government acquiescence "[w]here a government contains officials that would be complicit in torture, and that government, on the whole, is admittedly incapable of actually preventing that torture." *De La Rosa v. Holder*, 598 F.3d at 110; *Quintanilla-Mejia v. Garland*, 3 F.4th 569 at 592.

The applicant for CAT protection bears the burden of proof. 8 C.F.R. § 1208.16(c)(2). The applicant's testimony, if credible, may be sufficient to sustain the burden of proof without corroboration. 8 C.F.R. § 1208.16(c)(2). In assessing whether an applicant has satisfied his burden of proof, the Court must consider all evidence relevant to the possibility of future torture, including evidence that the applicant has suffered torture in the past; evidence that the applicant could relocate to a part of the country of removal where she is not likely to be tortured; evidence of gross, flagrant or mass violations of human rights within the country of removal; and other relevant information on country conditions. 8 C.F.R. § 1208.16(c)(3); *see also Ramsameachire v. Ashcroft*, 357 F.3d 169, 184 (2d Cir. 2004); *Doe v. Sessions*, 886 F.3d 203 (2d Cir. 2018).

Eligibility for CAT relief cannot be established by stringing together a series of suppositions to show that torture is more likely than not to occur unless the evidence shows that each step in the hypothetical chain of events is more likely than not to happen. *Matter of J-F-F-*, 23 I&N Dec. 912, 917-18 (AG 2006); *see also Savchuck v. Mukasey*, 518 F.3d 119, 123-24 (2d Cir. 2008). "[T]he existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute sufficient grounds for determining that a particular person would be in danger of being subjected to torture upon his return to that country. Specific grounds must exist that indicate the individual would be personally at risk." *Matter of J-E-*, 23 I&N Dec. at 303.

When the applicant was first removed to Jamaica on or about November 2012, he lived in the Norwood area of the Montego Bay (Tr. at 156). The applicant testified as to his knowledge of a defrauding scheme known informally as a "lottery scam" run in Jamaica, where individuals call people in the United States, telling them that they have won fake prizes and that they must pay money to claim the prizes (Tr. at 158, 162-163). The individuals who perpetuate these scams, "scammers," also commit acts of violence (*id.*). The applicant testified that a man called Richie, who was his former schoolmate, runs one of these lottery scams (Tr. at 158-189). Richie is also leader of the gang in Granville, called Big Yard, also known as ISIS or MX-19 (Tr. at 80). A few months after the applicant returned to Jamaica in 2012, he encountered Richie, who proposed that

he join the scam (Tr. at 159). The applicant refused, and Richie told him that he would have to join (Tr. at 159-160). He testified that he was particularly attractive to the scammers because he could speak fluent English (Tr. at 159). On June 21, 2014, the applicant was attacked by Richie and his associates, who are gang members, with machetes at the marketplace where he worked (Tr. at 165-173, 233). As a result of the attack, the applicant had two surgeries and now takes daily seizure medication (Tr. at 174-176). His partner and witness in this proceeding, Patricia, filed a police report against Richie following the 2014 attack (Exh. 3.1.). The applicant did not file a police report, and when he was released from the hospital, he went into hiding at his mother's house in Granville (Tr. at 113; 184). In October 2015, the applicant traveled to the British Virgin Islands, as he again feared for his safety in Jamaica (Tr. at 186). He then returned to Jamaica on or about January 2017 to see his son, whom he shares with Patricia (Tr. at 187). Approximately eight months after the applicant had taken the trip to Jamaica and then returned to British Virgin Islands, he reentered the United States on or about December 7, 2017, at the U.S. Virgin Islands and claimed a fear of return to Jamaica (Tr. at 190).

The applicant claims that if he were to return to Jamaica, he would more likely than not be subjected to harm rising to the level of torture as recognized under 8 C.F.R. § 1208.18(a) by Richie, and/or his gang member associates, and/or lottery scammers, and/or Jamaican police (Individual Hearing Dec. 11, 2024; Tr. at 193-198; Exhs. 2, 2.1). He further claims that the torture by private actors will be with the requisite instigation, consent, or acquiescence of a public official or person acting in an official capacity (Individual Hearing Dec. 11, 2024; Tr. at 193-198). He fears torture due to multiple, interrelated causes: his escape from Richie and his gang member associates in 2014; his refusal to assist lottery scammers; his status as a long time U.S. resident; as well as the collusion between the lottery scammers, gangs, and the government (*id.*). For the reasons that follow, and upon consideration of the applicant's fear of torture in the aggregate, the Court finds that the applicant will more likely than not suffer torture by the private actors he fears with the acquiescence of a Jamaican public official or person acting in an official capacity. <u>Accordingly, the Court will grant the applicant's application for withholding of removal under the CAT.</u>

The Court considers the applicant's overall risk of torture in the aggregate, rather than as separate, divisible claims. *See Matter of J-R-G-P-*, 21 I&N Dec 482 at 484. In considering the applicant's risk of torture from Richie and his gang member associates if the applicant were removed to Jamaica, the Court first evaluates the applicant's claim that he experienced past torture by these individuals. *See* 8 C.F.R. § 1208.16(c)(3)(i) (directing consideration of past torture in assessing the likelihood of future torture).

The record demonstrates that the applicant's refusal to partake in Richie's criminal scheme, a lottery scam, as well as his status as a long time U.S. citizen, has made him a target of harm rising to the level of torture at the hands of Richie and his gang member associates, and it was inflicted with the requisite acquiescence of a public official or person acting in an official capacity. *See Garcia-Aranda*, 53 F.4th at 759 (providing that "[a]cquiescence is satisfied where the government actor knows of or remains willfully blind to an act and thereafter breaches their legal responsibility to prevent it"); *see also Matter of O-F-A-S-*, 28 I&N Dec. at 40.

The applicant demonstrated the past harm he suffered by Richie and his gang member associates was "an extreme form of cruel and inhuman treatment" that caused "severe pain or

6

suffering" and is therefore mistreatment sufficiently severe to constitute torture. 8 C.F.R. § 1208.18(a)(1)–(2). The applicant's life was first threatened by Richie in 2012 after he refused to join Richie's lottery scam (Tr. at 159-60). On June 21, 2014, the applicant was attacked by Richie and his associates at a marketplace after he again refused Richie's recruitment (Tr. at 165-173, 233). On this date, a man unknown to the applicant came up from behind the applicant at the marketplace and asked him if he had thought about what Richie has asked him to do in 2012. The applicant said "no" (Tr. at 165-66). The man who came up to him walked away and touched the body of Patricia (*id.*). The applicant approached him and saw Richie and two other men (Tr. at 166). Patricia's affidavit reveals that besides Richie, one of the other men's names was Raceen, and he is also a gang member (Exh. 3.1). The third man was unknown to both the applicant and Patricia (Tr. at 66, 166). All three of these men had machetes (Tr. at 66). Richie struck the applicant on the right side of his head over his eye with a machete (Tr. at 166-67). The applicant ran after he was struck (Tr. at 168). He then felt a pinch, which was a machete cut in the back of his skull that occurred while he was running (Tr. at 168-169). The applicant tried to hide and then got cut on his left hand, where there is now an inch scar (Tr. at 171). The applicant fell unconscious and woke up in the hospital (Tr. at 172). The applicant was hospitalized at the Cornwall Regional Hospital (Exh. 4 at 6). He submitted evidence that he underwent a craniotomy, elevation of depressed skull fracture, and laceration of epidural hematoma (Exh. 4 at 6). He was bleeding under the skull and suffering seizures (Tr. at 174-176). He had never had seizures before, and he was not fully recovered when he left the hospital (Tr. at 174-176). The applicant had follow-up care with doctors in Jamaica and continued to have seizures (Tr. at 174-176). He is currently taking medicine for seizures, which he will need for the entirety of his life (Tr. at 174-176). He testified that he is slow in processing and remembering information (Tr. at 177). He also suffers migraines and stutters (Tr. at 177). Accordingly, the Court finds the foregoing harm was sufficiently severe to constitute harm rising to the level of torture.

The Court next considers whether the applicant met his burden of showing that the torture he suffered by private actors occurred with the acquiescence of a public official or person acting in an official capacity. 8 C.F.R. § 1208.18(a)(1). The applicant testified that the market police were posted above where the 2014 attack occurred (*See also* Exh. 4 at Tab C). Ordinarily, police officers would walk around every five minutes because of the gang violence in the market (Exh. 3.1). While the police were at the marketplace on the day of the attack, as witnessed by Patricia, the police were absent during the attack (Tr. at 74; Exh. 3.1). The applicant testified that the police at the market did not assist him or protect him during the attack, even though by the applicant's account, the attack took much longer than it would have taken the police to complete a five-minute round (Tr. at 165-173). The Court acknowledges that the police did go to the hospital (Exh. 3.1). They wanted a statement from the applicant, but he could not give a statement due to his mental and physical state (Exh. 3.1). Therefore, Patricia gave a statement which included Raceen's name, but not Richie's name (Exh. 3.1). She does not recall for how long she gave the statement, but the officer who interviewed her wrote a report and gave her a receipt for the report (Exhs. 3.1, 4 at Tab D). The officer refused to give his name to her and instructed her to use his phone number to get in contact with him (Tr. at 111, 116-117). She tried to follow up with the police regarding this receipt (Tr. at 78). She called the officer who wrote the report and the Freeport Police Station's phone number, both of which were on the receipt (Tr. at 112-113). She made approximately 20 calls to the Freeport Police Station and went to the Freeport Police Station herself multiple times (Tr. at 77). When she went to the station, she gave them the receipt she received, and they told

7

her that they could not find the officer who took her statement because he was no longer there, and his telephone number was disconnected (Tr. at 77). She spoke to a different officer at the station, her friend Mark, who told her to "leave it alone and let it rest," (Tr. at 77; Exh. 3.1). She understood this response as a warning from Mark because she was aware that Mark is friends with people in the Big Yard Gang, the gang that Richie leads (Tr. at 78, 89). She believes that this statement and Mark's friendship with the gang members confirmed that the local gangs are affiliated with the police (Tr. at 78). She never heard back from the police on the results of any investigation (Tr. at 77). The applicant testified that he does not know if anyone was arrested in connection with the attack against him (Tr. at 183). The applicant testified that he did not file a police report because he did not trust the police after they did not assist him during the attack and because if he did file a report, his address would be on file and accessible to his persecutors (Tr. at 178; Exh. 1).

The applicant established that the past torture he suffered by Richie and his gang member associates occurred with the acquiescence of a public official or person acting in an official capacity. 8 C.F.R. § 1208.18(a)(1). The police, who were present at the scene of the applicant's attack to prevent common gang violence that occurs at the market, did not come to his aid at any point (Exhs. 3.1,4; Tr. at 178). The police did not investigate the report filed on the applicant's behalf concerning the 2014 attack (Tr. at 77, 183; Exh. 3.1). When Patricia attempted to inquire into the status of her statement at the police station, they did not assist her (Tr. at 74-78; Exh 3.1). Instead, a police officer, Mark, who is friends with the applicant's persecutors threatened her (Tr. at 77; Exh. 3.1). The interaction between Patricia and the officers occurred while they were on duty at the Freeport Police Station, and therefore they exercised power possessed by virtue of law, made possible only because he was clothed with the authority of law (Tr. at 77). *Matter of O-F-A-S-*, 28 I&N Dec. at 40. While the Court acknowledges that the applicant himself did not file a police report, the foregoing circumstantial and direct evidence in the record supports the applicant's reason for not doing so, namely, that the police at the Freeport Police Station were closely linked to Richie's gang and he could not safely report the 2014 incident. Based on the foregoing, the applicant established that the past torture he suffered by Richie and his gang member associates occurred with the acquiescence of a public official or person acting in an official capacity. 8 C.F.R. § 1208.18(a)(1).

Given the totality of the circumstances in this case, the individuals who tortured the applicant in the past would have both the inclination and the ability to torture him should he return to Jamaica. As an initial matter, Richie still lives in Jamaica and continues to operate the Big Yard Gang, defrauding American citizens as a lottery scammer (Individual Hearing Dec. 11, 2024). The applicant is easily identifiable by Richie and his gang member associates due to his visible scar and physical symptoms that he maintained from the 2014 attack (Tr. at 166-168). He is also identifiable due to his manner of dressing and speech (Exh. 2.1). Additionally, the applicant stated in his affidavit that due to the small size of his community, and the fact most of his family members reside in the United States, community members will be aware of his return to Montego Bay (Exh. 2.1). Therefore, the applicant has demonstrated he will more likely than not come to the attention of Richie and his gang member associates if removed to Jamaica.

The Court also finds that it is more likely than not that Richie and his gang member associates would target the applicant to kill him. To support this finding, the Court points out that threats against the applicant's life continued once Richie, and his gang member associates, learned

from a taxi driver that he was still alive and in Jamaica following the 2014 attack (Tr. at 86-87; Exhs. 2.1, 3.1). Additionally, the applicant has demonstrated that Richie and his gang member associates have a continued interest in finding him and killing him (Individual Hearing Dec. 11, 2024). The applicant testified that since he has been in the United States individuals related to him and/or Patricia were targeted and killed by Richie's friends (Individual Hearing Dec. 11, 2024; Exh. R-2). These individuals were killed when they refused to share information about the applicant in order to protect him (Individual Hearing Dec. 11, 2024).

The applicant is also at heightened risk of torture by other lottery scammers and gang members in Jamaica due to his status as a long-term U.S. resident and his refusal to partake in lottery scams. The applicant cannot speak Patois, the most commonly spoken dialect in Jamaica (Exhs. 2.1, 6). The applicant speaks English with an American accent that is noticeable to other Jamaicans (Individual Hearing Dec. 11, 2024; Exh. 2.1). As found *supra*, the applicant was recruited by Richie and his gang member associates to join their scam because of his period in the United States and their belief that he could give them contact information of U.S. citizens (Tr. at 82). Based on the foregoing, he more likely than not will come to the attention and be targeted for recruitment by lottery scammers and gang members who assist lottery scammers. The applicant's previous refusal to join a scam has already led to threats and attempts on his life (Tr. at 158-160, 166-177). Therefore, the Court finds, consistent with the applicant's credible testimony, that when he refuses any future lottery scammers' advances at recruitment, he more likely than not will be harmed by these lottery scammers or affiliated gang members (Tr. at 198; *see also* Exhs. 2.1).

The Court finds that the submitted country conditions evidence is largely relevant and supportive to the applicant's claim that he is more likely than not to be tortured if removed to Jamaica. *See* 8 C.F.R. §§ 1208.16, 1208.17, 1208.18. Specifically, the evidence demonstrates that lottery scams are prevalent and frequently accompanied by violence and gang-related crime (Exhs. 4, R-2). In lottery scams, the victims receive an unsolicited phone call saying they have won a lottery or sweepstakes but need to pay money to claim the jackpot (Exhs. 4, R-2). It is a scam that frequently targets older Americans (Exhs. 4, R-2). Lottery scamming has directly led to a dramatic increase in violent crime—including murder, shootings, and extortion (Exh. 4). The violence associated with scamming is typically over business deals gone wrong, followed by reprisal killings (Exh. R-2). Gangs become involved when the lottery scammers need protection or assistance in collecting money (Exh. R-2). In only 20 days during January 2018, there were 100 homicides in Jamaica, averaging 5 murders a day (Exh. R-2). The record demonstrates that as recent as 2022, because of the fight over 1 billon U.S. dollars in lottery scamming money flowing into the four western parishes of Police Area One- St. James, Trelawny, Westmoreland, and Hanover, there has been a sharp 53 percent rise in murders (Exh. R-2).

The above factors independently present a high risk of torture for the applicant. When considered aggregately, as required for a CAT analysis, they show that if the applicant were repatriated back to Jamaica, the applicant would more likely than not be tortured. *See Matter of J-R-G-P-*, 21 I&N Dec at 484.

The Court also finds that the record establishes that this torture would be carried out with the acquiescence of a public official or person acting in an official capacity. *See* 8 C.F.R. §

9

1208.18(a)(7). Specifically, the Court finds that the police in Jamaica, who would be acting under color of law, would acquiesce to this torture. *Id.; see also Khouzam*, 361 F. 3d at 171.

The Court acknowledges that the government in Jamaica has announced measures that are, at least on paper, designed to combat criminal gang violence and address violence and fraud resulting from lottery scams (*See* Exh. 4). *See Quintanilla-Mejia*, 3 F.4th at 593 (holding that evidence of some government efforts to prevent violence invites careful factfinding). For instance, at varying times the Government of Jamaica has declared State of Emergencies, including in Montego Bay, to address organized crime violence (Exh. 4). The Jamaican government has also worked with the United States to extradite Jamaican lottery scammers to the United States (Exh. 4). The record also demonstrates that as of 2018, Richie, under his government name, was being sought for questioning by the Freeport Police Station for violence in the Granville community (Exhs. 3.1, 4). In 2015, Raceen, was included on a "wanted list" by the St. James Police Division for "wounding with intent" (Exhs. 3.1; 4). The Court further acknowledges that the police investigated the murders of Shellyann Shaw and her son, two individuals killed by Richie's friends (Exh. R-2).

Regardless of the foregoing preventative efforts of some government actors, the Court finds the applicant has demonstrated the requisite acquiescence. *De La Rosa v. Holder*, 598 F.3d at 110. In support of this finding, the Court has considered the applicant's particularized evidence as well as general country conditions. The applicant has established that Richie continues to freely operate his gang (Individual Hearing Dec. 11, 2024), and the record is silent as to whether Raceen has been apprehended. While an investigation may have been conducted into the death of Shellyann Shaw and her son, there is no evidence the investigation has been resolved (Exh. R-2). The applicant also credibly testified that no investigation took place into the other individuals who died protecting him (Individual Hearing Dec. 11, 2024; Exh. R-2).

Significantly, the country conditions evidence is unequivocal that serious government corruption is a significant problem of public concern in Jamaica (Exh. R-1, R-2, R-3). Corruption within Jamaica has made it difficult to crack down on the perpetrators of lottery scams (Exh. R-2). Many police officers and soldiers have been arrested for themselves profiting from the fraudulent schemes, including one police officer who was part of a group that stole more than $5.7 million (Exh. R-2). A 2016 Amnesty International report accused Jamaican authorities of routinely committing unlawful killings, tampering with evidence, and planting weapons on victims of police killings (Exh. R-2). The law provided criminal penalties for corruption by officials, but the government generally did not implement the law effectively and corruption remains entrenched and widespread, even among senior government officials (Exh. R-3). Organized crime leaders have historically had ties to government officials (*id.*). The judicial system has a poor record of prosecuting corruption cases against law enforcement and government officials (*id.*). Media and civil society organizations have criticized the government for being at times reluctant to prosecute corruption (Exh. R-1). U.S. officials have also claimed that local police and emergency services personnel do not "respond effectively" to serious crimes. (Exh. R-2). Against this background of corruption and direct involvement by police with organized crime, the applicant's own experiences dealing with the police in Jamaica—specifically that the Montego Bay police are in league with Richie's gang, the Big Yard Gang—establish that it is more likely than not that the applicant would be tortured by the private actors he fears and that police in Jamaica, who would be acting under

color of law, would acquiesce to this torture. *See* 8 C.F.R. § 1208.18(a)(7); *Khouzam*, 361 F. 3d at 171.

Finally, the Court finds that the applicant cannot relocate within Jamaica. *See Manning v. Barr*, 954 F.3d 477, 488 (2d Cir. 2020) (holding that the applicant's ability to avoid torture by relocating is one factor to consider, and not necessarily dispositive of CAT eligibility). The applicant testified that Jamaica is a very small country and if he was to move within or outside of Montego Bay, he would not be safe (*see* Tr. at 232; Individual Hearing Dec. 11, 2024). Gangs operate in each parish of Jamaica (Tr. at 88, 231-232). The Court acknowledges that while he was temporarily safe when he was hiding in his mother's house in Montego Bay after the 2014 attack, once the gang discovered he was alive and threatened to kill him, he had to leave for the British Virgin Islands (Tr. at 87). While the applicant has been in the United States, his family members and people connected to him have been killed while attempting to protect him from lottery scammers and it is reasonable to assume they will continue to kill people to find the applicant wherever he may be in Jamaica (Individual Hearing Dec. 11, 2024). Moreover, while the Court acknowledges that the applicant returned to Jamaica for 5 days in 2017 to visit his son, he credibly testified that he moved surreptitiously from place to place outside of Montego Bay and did not feel safe during this time (Individual Hearing Dec. 11, 2024). The Court also acknowledges that the applicant would be particularly vulnerable due to his medical condition and medical requirement to periodically see a doctor (*See* Exh. 5). While Patricia assisted the applicant in taking him to medical appointments, she currently lives in the United States along with most the applicant's family members (Individual Hearing Dec. 11, 2024). Finally, as demonstrated by the country conditions evidence, serious government corruption is a significant problem that is widespread (Exhs. R-1, R-2, R-3).

## IV. CONCLUSION

In conclusion and based on the foregoing, the Court finds that the applicant has met his burden of establishing eligibility for withholding of removal under the CAT.

Accordingly, the following orders will be entered:

### ORDERS

**IT IS HEREBY ORDERED** that the applicant be **REMOVED** from the United States to Jamaica.

**IT IS FURTHER ORDERED** that the applicant's application for withholding of removal under the Convention Against Torture be **GRANTED.**

<u>1/3/2025</u>
Date

Eric Schultz
United States Immigration Judge

11

**APPEAL RIGHTS:** Both parties have the right to appeal the decision in this case. Appeals must be filed with the Board "within 30 calendar days after the mailing of a written decision, the stating of an oral decision, or the service of a summary decision. The filing date is defined as the date of receipt of the Notice of Appeal by the Board of Immigration Appeals. The reasons for the appeal shall be stated in the Notice of Appeal in accordance with the provisions of [8 C.F.R.] § 1003.3(b) . . . Failure to do so may constitute a ground for dismissal of the appeal by the Board pursuant to [8 C.F.R.] § 1003.1(d)(2) [.]" 8 C.F.R. § 1240.15.

--------------------------------------------------------------------------------
### Certificate of Service

This document was served by:    ☐ Mail    ☐ Personal Service    ☐ Electronic
To: ☐ Noncitizen ☐ Noncitizen c/o Custodial Officer ☐ Noncitizen's Atty/Rep ☑ DHS
Date: 1/3/25                                    By Court Staff: _____
Attachments: ☐ EOIR-33    ☐ EOIR-28    ☐ Legal Services List        ☐ Other

# *Exhibits* (C)

Criminal Court order and  Disposition Certificates



# BRONX CRIMINAL COURT

265 E 161 Street, Bronx, NY 10451

**NO FEE**

Non-Public
Version

Court ORI: NY062033J

| The People of the State of New York | **Certificate of Disposition** | |
|---|---|---|
| vs. | Docket Number: | **CR-010388-98BX** |
| **Owen Simms** | Legacy Docket Number: | **98X010388** |
| | | |
| | CJTN: | 50352786Y |
| | NYSID: | 08282351R |

| Defendant DOB: **08/19/1974** | Arrest Date: **02/12/1998** | Arraignment Date: **02/13/1998** |
|---|---|---|

THIS IS TO CERTIFY that the undersigned has examined the files of the **Bronx Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 221.30 CF Crim Poss Marihuana-1st:10 Lbs **SEALED 160.50** | CF | Reduced to (Count #3) | 04/06/1998 |
| 2 | PL 221.05 V Unlawful Possession Marihuana **SEALED 160.50** | V | Covered by (Count #4) | 04/22/1998 |
| 3 | PL 221.15 AM Crim Poss Marihuana-4th: >2 Oz **SEALED 160.50** | AM | Covered by (Count #4) | 04/22/1998 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 4 | 02/12/1998 | PL 221.10 **SEALED 160.50** | Crim Possession Marihuana-5th | BM | Pled Guilty | Conv: 04/22/1998 Sent: 04/22/1998 | • Conditional Discharge (1 Years) • Surcharge (MS ($90.00) - due 04/22/1998) |

**A balance remains due and owing for fines, fees and/or surcharges imposed at sentence.**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated: __October 29, 2024__          _____
                                              Chief Clerk/Clerk of the Court

CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal

procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. For purposes of this subdivision, an action which has been adjourned in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, shall not be considered a pending action, unless the order to adjourn in contemplation of dismissal is revoked and the case is restored to the calendar for further prosecution. [Executive Law 296(16)]

Conviction charges may not be the same as the original arrest charges.

Charges may not be the same as the original arrest charges.

CPL 160.50:          All official records (excluding published court decisions or opinions or records and briefs on appeal) related to the arrest or prosecution on file with the Division of Criminal Justice Services, any court, police agency or prosecutor's office shall not be available to any person or public or private agency.



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500  Fax: (718) 643-7733

Court ORI: NY023033J

## NO FEE
**Non-Public Version**

---

The People of the State of New York
vs.
**Owen Simms**

| | |
|---|---|
| **Certificate of Disposition** | |
| Docket Number: | **CR-071543-98KN** |
| Legacy Docket Number: | **98K071543** |
| | |
| CJTN: | 50536043Z |
| NYSID: | 08282351R |

Defendant DOB: **08/19/1964**

Arrest Date: **08/27/1998**     Arraignment Date: **08/28/1998**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 2-3 | PL 221.05 V Unlawful Possession Marihuana **SEALED 160.50** | V | Covered by (Count #1) | 08/28/1998 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 1 | 08/27/1998 | PL 221.40 **SEALED 160.50** | Crim Sale Marihuana-4th | AM | Pled Guilty | Conv: 08/28/1998 Sent: 08/28/1998 | • Surcharge (MS ($90.00) - due 04/19/1999) • Fine ($200.00/30 d - due 04/19/1999) |

**All fines, fees & surcharges imposed at sentence are paid in full.**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated:  **November 12, 2024**

Chief Clerk/Clerk of the Court

## CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 or the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. For purposes of this subdivision, an action has been adjourned in contemplation of dismissal, pursuant to section ...

Case 66-cv-00458-MAV Document 131 Filed 07/03/25 Page 49 of 71



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500  Fax: (718) 643-7733

Court ORI: NY023033J

# NO FEE
**Non-Public Version**

| | |
|---|---|
| The People of the State of New York<br>vs.<br>**Owen Simms** | **Certificate of Disposition**<br>Docket Number: **CR-014658-99KN**<br>Legacy Docket Number: **99K014658**<br><br>CJTN: 50700807Q<br>NYSID: 08282351R |

Defendant DOB: **08/19/1974**

Arrest Date: **02/25/1999**   Arraignment Date: **02/26/1999**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 2 | PL 221.05 V Unlawful Possession Marihuana **SEALED 160.50** | V | Covered by (Count #1) | 04/12/1999 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 1 | 02/25/1999 | PL 221.40 **SEALED 160.50** | Crim Sale Marihuana-4th | AM | Pled Guilty | Conv: 04/12/1999<br>Sent: 04/12/1999 | • Surcharge (MS ($90.00) - due 06/14/1999)<br>• Conditional Discharge (1 Years) |

**A balance remains due and owing for fines, fees and/or surcharges imposed at sentence.**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated:   **November 12, 2024**

Chief Clerk/Clerk of the Court

## CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment as a member of any police force or peace officer agency of the state with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. For purposes of this subdivision, an action which has been adjourned in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, shall not be considered a pending action, unless the order to adjourn in contemplation of dismissal is revoked and the case is restored to the calendar for further prosecution. [Executive Law 296(16)]



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500  Fax: (718) 643-7733

Court ORI: NY023033J

**NO FEE**

Non-Public
Version

---

The People of the State of New York
vs.
**Owen Simms**

**Certificate of Disposition**
Docket Number:        **CR-034901-00KN**
Legacy Docket Number:   **2000KN034901**

CJTN:      55340796R
NYSID:     08282351R

Defendant DOB: **08/09/1974**

Arrest Date: **04/19/2000**   Arraignment Date: **04/19/2000**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 221.10 01 BM Crim Poss Marihuana-5th:Public **SEALED 160.50** | BM | Covered by (Count #3) | 05/03/2000 |
| 2 | PL 221.05 V Unlawful Possession Marihuana **SEALED 160.50** | V | Covered by (Count #3) | 05/03/2000 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 3 | 04/19/2000 | PL 110-221.10 **SEALED 160.50** | Attempted Crim Possession Marihuana-5th | BM | Pled Guilty | Conv: 05/03/2000 Sent: 05/03/2000 | • Conditional Discharge (1 Years) • Surcharge (MS ($90.00) - due 05/03/2000) |

**A balance remains due and owing for fines, fees and/or surcharges imposed at sentence**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated: **November 12, 2024**

Chief Clerk/Clerk of the Court

## CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section

pursuant to Section 160.50 of the CPL.



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500  Fax: (718) 643-7733

Court ORI: NY023033J

## NO FEE

**Non-Public Version**

| | |
|---|---|
| The People of the State of New York<br>vs.<br>**Owen Simms** | **Certificate of Disposition**<br>Docket Number: **CR-053801-00KN**<br>Legacy Docket Number: **2000KN053801**<br><br>CJTN:  55432420R<br>NYSID:  08282351R |

Defendant DOB: **08/19/1974**          Arrest Date: **06/28/2000**     Arraignment Date: **06/29/2000**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 205.30 AM Resisting Arrest **SEALED 160.50** | AM | Covered by (Count #4) | 10/13/2000 |
| 2 | AC 10-133 BO V Forced Conversion Charge (Forced) **SEALED 160.50** | V | Covered by (Count #4) | 10/13/2000 |
| 3 | PL 221.05 V Unlawful Possession Marihuana **SEALED 160.50** | V | Covered by (Count #4) | 10/13/2000 |
| 5 | PL 221.40 AM Crim Sale Marihuana-4th **SEALED 160.50** | AM | Covered by (Count #4) | 10/13/2000 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 4 | 06/28/2000 | PL 221.10 01 **SEALED 160.50** | Crim Poss Marihuana-5th:Public | BM | Pled Guilty | Conv: 10/13/2000<br>Sent: 12/04/2000 | • Imprisonment (15 days)<br>• Probation (1 Years)<br>• License Suspended (6 Months)<br>• Surcharge (MS ($120.00) - due 02/23/2001) |

**A balance remains due and owing for fines, fees and/or surcharges imposed at sentence.**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated:  **November 12, 2024**

Chief Clerk/Clerk of the Court

CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition—are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure

pursuant to Section 160.50 of the CPL



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500 Fax: (718) 643-7733

Court ORI: NY023033J

**NO FEE**
Non-Public
Version

| The People of the State of New York | Certificate of Disposition | |
|---|---|---|
| vs. | Docket Number: | **CR-037771-05KN** |
| **Owen Simms** | Legacy Docket Number: | **2005KN037771** |
| | CJTN: | 57512259L |
| | NYSID: | 08282351R |

Defendant DOB: **08/19/1974**     Arrest Date: **06/11/2005**     Arraignment Date: **06/12/2005**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 221.40 AM Crim Sale Marihuana-4th **SEALED 160.50** | AM | Reduced to (Count #5) | 01/20/2006 |
| 2-3 | PL 221.05 V Unlawful Possession Marihuana **SEALED 160.50** | V | Covered by (Count #5) | 01/20/2006 |
| 4 | PL 221.10 01 BM Crim Poss Marihuana-5th:Public **SEALED 160.50** | BM | Covered by (Count #5) | 01/20/2006 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 5 | 06/11/2005 | PL 110-221.40 **SEALED 160.50** | Attempted Crim Sale Marihuana-4th | BM | Pled Guilty | Conv: 01/20/2006 Sent: 01/20/2006 | • Conditional Discharge (1 Years) • Surcharge (MS ($140.00), CVAF ($20.00) - due 03/23/2006) • License Suspended (6 Months) |

**All fines, fees & surcharges imposed at sentence are paid in full.**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated: **November 12, 2024**

Chief Clerk/Clerk of the Court

## CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition—are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an

pursuant to Section 160.50 of the CPL

Case 6:25-cv-06458-MAV   Document 11   Filed 09/04/25   Page 53 of 71



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500  Fax: (718) 643-7733

Court ORI: NY023033J

## NO FEE
**Non-Public Version**

| The People of the State of New York | **Certificate of Disposition** | |
|---|---|---|
| vs. | Docket Number: | **CR-052960-06KN** |
| **Owen Simms** | Legacy Docket Number: | **2006KN052960** |
| | | |
| | CJTN: | 58231698Y |
| | NYSID: | 08282351R |

| Defendant DOB: **08/19/1974** | Arrest Date: **08/02/2006** | Arraignment Date: **08/03/2006** |
|---|---|---|

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 2 | PL 221.05 V Unlawful Possession Marihuana **SEALED 160.50** | V | Covered by (Count #1) | 11/15/2006 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 1 | 08/02/2006 | PL 221.10 01 **SEALED 160.50** | Crim Poss Marihuana-5th:Public | BM | Pled Guilty | Conv: 11/15/2006 Sent: 11/15/2006 | • License Suspended (6 Months) • Imprisonment (Time Served) • Surcharge (MS ($140.00), CVAF ($20.00) - due 01/25/2007) |

**All fines, fees & surcharges imposed at sentence are paid in full.**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated: **November 12, 2024**

Chief Clerk/Clerk of the Court

## CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition—are vacated, dismissed, sealed and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. For purposes of this subdivision, an action which has been adjourned in contemplation of dismissal, pursuant to section

pursuant to Section 160.50 of the CPL.



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500  Fax: (718) 643-7733

Court ORI: NY023033J

# NO FEE
### Non-Public Version

| | |
|---|---|
| The People of the State of New York<br>vs.<br>**Owen O. Simms** | **Certificate of Disposition**<br>Docket Number: **CR-008759-07KN**<br>Legacy Docket Number: **2007KN008759**<br><br>CJTN:   58759416Q<br>NYSID:   08282351R |

Defendant DOB: **08/09/1974**    Arrest Date: **01/31/2007**    Arraignment Date: **02/01/2007**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 2 | PL 221.10 02 BM Crim Poss Marihuana-5th:>25gr **SEALED 160.50** | BM | Covered by (Count #1) | 02/01/2007 |
| 3 | PL 221.05 V Unlawful Possession Marihuana **SEALED 160.50** | V | Covered by (Count #1) | 02/01/2007 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 1 | 01/31/2007 | PL 221.15 **SEALED 160.50** | Crim Poss Marihuana-4th: >2 Oz | AM | Pled Guilty | Conv: 02/01/2007<br>Sent: 02/01/2007 | • Fine ($300.00/30 d - due 07/18/2007)<br>• Surcharge (MS ($140.00), CVAF ($20.00) - due 07/18/2007)<br>• License Suspended (6 Months) |

**All fines, fees & surcharges imposed at sentence are paid in full.**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated: **November 12, 2024**

Chief Clerk/Clerk of the Court

### CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-four and thirty-four-a of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency pursuant to Section 160.50 of the CPL.



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500  Fax: (718) 643-7733

Court ORI: NY023033J

# NO FEE
**Non-Public Version**

| The People of the State of New York | Certificate of Disposition | |
|---|---|---|
| vs. | Docket Number: | **CR-056246-07KN** |
| **Owen Simms** | Legacy Docket Number: | **2007KN056246** |
| | CJTN: | 59285610H |
| | NYSID: | 08282351R |

| Defendant DOB: **08/19/1974** | Arrest Date: **07/27/2007** | Arraignment Date: **07/28/2007** |
|---|---|---|

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 2 | PL 221.05 V Unlawful Possession Marihuana **SEALED 160.50** | V | Covered by (Count #1) | 10/18/2007 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 1 | 07/27/2007 | PL 221.10 01 **SEALED 160.50** | Crim Poss Marihuana-5th:Public | BM | Pled Guilty | Conv: 10/18/2007 Sent: 10/18/2007 | • License Suspended (6 Months) • Imprisonment (Time Served) • Surcharge (MS ($140.00), CVAF ($20.00) - due 10/18/2007) |

**A balance remains due and owing for fines, fees and/or surcharges imposed at sentence.**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated: **November 12, 2024**

Chief Clerk/Clerk of the Court

CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55, 170.56, 210.46, 210.47, or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.59 or 160.58 of the criminal procedure law, in connection with the licensing, housing, employment, including volunteer positions, or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by an order adjourning the criminal action in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. An individual required or requested to provide information in violation of this subdivision may respond as if the arrest, criminal accusation, or disposition of such arrest or criminal accusation did not occur. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. For purposes of this subdivision, an action which has been adjourned in contemplation of dismissal, pursuant to section 170.55 or 170.56, 210.46, 210.47 or 215.10 of the criminal procedure law, shall not be considered a pending action, unless the order to adjourn in contemplation of dismissal is revoked and the case is restored to the calendar for further prosecution. [Executive Law 296(16)]

# *Exhibits*(D)

*Medicial Record*

# Patient Medical Record

**SIMMS, OWEN**

50 yo M, DOB: Aug 19, 1974
Account Number: 1000976996
4250 FEDERAL DRIVE
BATAVIA, NY 14020

| Patient Medical Record | Page(s) |
|---|---|
| Patient Documents | 2 to 10 |
| **Total Pages** | **10** |

**Note:** There may be certain notes which are not made available as per your physician's discretion, please contact your physician's office to obtain those.

9/10/24, 3:40 PM         eCW (Davies, Pamela M) Azure Production Environment

SIMMS, OWEN OLIVER DOB: 08/19/1974 (50 yo M) Acc No. 1000976996



**U.S. Immigration
and Customs
Enforcement**

## REFERRAL
Consultation Request and Hospital Transfer Form

**Referral To Information:**

Specialty:     Orthopedics
Provider Name:
Facility:

**Patient Information:**

Patient:     OWEN OLIVER SIMMS
DOB:      08/19/1974
SubID:     392477268
A:        044847829
Facility:    Buffalo SPC
Housing Area:C3
MRN No:    1087714135
Patient SSN:

**Referral From Information:**

Referral ID:
Authorization Code:    2024083047347
Provider Name:     Annabelle L Schrauger, NP
Date and Time:     10/08/2024
Priority:         Routine
Diagnosis:       T84.84XD - Pain due to internal orthopedic prosthetic devices, implants and grafts, subsequent encounter
               Z87.828 - Personal history of other (healed) physical injury and trauma
Reason:         Orthopedic referral

Clinical Notes:    Schrauger NP, Annabelle L 08/27/2024 02:52:43 PM >Please approve orthopedic referral. Pt c/o right leg pain.
pt with PMHx of gun shot wound on right lower leg s/p rod placement in 2020.NO s/s of infection. Davies,
Pamela M 09/10/2024 03:40:14 PM >Approved Orthopedic CONSULT on 10.8.24. Submit a separate MedPAR
if patient requires other procedures, along with medical records and clinical assessment from this visit. Invasive
procedures performed by off-site providers require informed consent in the preferred language of the
noncitizen, documented prior to the procedure. Full medical records, including informed consent, must be
submitted to the IHSC detention facility Medical Records department after the appointment or procedure is
completed. Please fax or email notes to Pamela Davies, email: (pamela.m.davies@associate.ice.dhs.gov), fax:
(866-616-3945).

**Structured Data:**

**Consulting Physician Information:**

Date of Service:   10|8|24    (MISKOV MD

Physician(Print Name):   DACEM   Physician Signature:
                 PA

**Please place findings and recommendations below (use additional paper if necessary):**

NO SX REC @ present time
NO FURTH ortho rec.
FLW PRN

✱ REC - LIDOCAINE PATCH
MEDIAL DISTAL TIBIA
PRN HYPERESTHESIA

Annabelle Schrauger
Nurse Practitioner
10|8|24

Simms, Owen Oliver         A# 044847829        Page 1 of 4

10-10-2024 9:56       Datavant      Fax Id: 61518      D 3/6



**ECMCC**
462 Grider Street
Buffalo NY, 14215
*P (716) 898-3000 F*

OWEN SIMMS
4250 FEDERAL DRIVE
BUFFALO FED DET CTR
BATAVIA, NY 14020

DOB : 08/19/1974
Encounter Date 10/08/2024

**Health History**

Health History: Health History form has not been done within the past year.

Patient Health History form has not been reviewed with patient.

**Vitals**

**Vital Signs**

| | Recorded: 08-Oct-2024 10:22 AM |
|---|---|
| Temperature | 98.1 F, Oral |
| Heart Rate | 66 |
| Respiration | 18 |
| Systolic | 141, Right Upper Extremity, Sitting |
| Diastolic | 97, Right Upper Extremity, Sitting |
| Height | 5 ft 10 in |
| Weight | 174 lb |
| BMI Calculated | 24.97 kg/m2 |
| BSA Calculated | 1.97 m2 |
| Weight Measurement | Stated weight |
| Weight not obtainable, reason : | Patient refuses |
| O2 Saturation | 99 %, Room Air |
| FiO2 Flow Rate | 0 L/min, Room Air |

**Subjective**

Chief Complaint: PT STATES THAT HE IS HERE RELATED TO RIGHT LEG PAIN. PT STATES 4 YEARS AGO

※ Allscripts      1 of 3      10/10/24 9:53:52 AM

Simms, Owen Oliver                    A# 044847829                        Page 2 of 4

10-10-2024 9:56              Datavant          Fax Id: 61518                    D 4/6
*Patient:*          OWEN OLIVER SIMMS
*Encounter:*        10/08/2024 9:00AM                       *MRN:*    M001491956

HE RECEIVED A GSW , AND ROD PLACED IN 2020 IN HIS RIGHT LOWER LEG. PT STATES THAT HE ONLY
RECEIVED 1 OF 4 SURGERIES THAT WAS NEEDED PER BROOKS COUNTY IN QUEENS NY. PT STATES
PAIN AT 10/10 AND THAT HE WOULD LIKE TO REVIEW THE X-RAYS W THE PROVIDER AND SET UP
SURGERIES ASAP. TTB LPN.
Patient is not at risk for falls.
Preferred language is engish. Does not speak a language other than English at home. No interpreter is required.

Subjective: Joan is here for evaluation of right leg pain. He states that back in 2020 he sustained a gunshot wound
to the right lower extremity which required intramedullary fixation of a right distal tibia fracture. He had an
associated distal fibula fracture. He went on the heel that fine. He is currently incarcerated. He states that he
never received physical therapy but was doing some on his own. He has 2 main complaints today. He has pain at
his fracture site with weather changes, especially in the wintertime. He also has pain at the distal aspect of his leg
near where the exit wound was from the bullet. When he is applying lotion to his leg he gets episodes of some
exquisite pain in that area that do resolve. He is tried no specific interventions for this. He is here today to inquire
about heart removal. He walks with no assistive devices. He is requires no assist with his ADLs. No gross
numbness tingling or functional loss of his right lower extremity

**Objective**

Objective: Evaluation of the right lower extremity show well-healed surgical incisions. He has no significant
postoperative or posttraumatic swelling. Calf is soft and nontender. EHL/FHL/TA/GS 5 out of 5. Ankle range of
motion is 20 degrees dorsiflexion 4 degrees plantarflexion. No gross instability or laxity to the ankle. On the medial
aspect of his ankle on inspection he does have a traumatic wound that appears healed with no sign of infection.
He is does he does have diffuse hyperesthesia in this area. He has minor pain on his entrance wound on the
fibula. There is a palpable small defect here. His distal interlock screws are palpable but nontender. Proximal
aspect of his nail is nonpalpable and nontender. He has minimal pain at his fracture site.

Radiograph right tib-fib show intact hardware with no sign of loosening or failure. He is a well bridged and remodeling
distal tibia fracture. Associated fibula fracture does have a bony defect with a nonunion. The ankle appears to be well
aligned on tib-fib x-ray. There is residual retained foreign matter from the bullet and some bone comminution.

**Assessment**
1. History of Leg surgery
   • Assessed By: Bell, Thursday; Last Assessed: 08 Oct 2024
2. History of Brain surgery
   • Assessed By: Bell, Thursday; Last Assessed: 08 Oct 2024
3. No pertinent family history : Family History
   • Assessed By: Bell, Thursday; Last Assessed: 08 Oct 2024
4. No Illicit drug use
   • Assessed By: Bell, Thursday; Last Assessed: 08 Oct 2024
5. History of gunshot wound (Z87.828)
   • Assessed By: Bell, Thursday; Last Assessed: 08 Oct 2024
6. History of Epilepsy (G40.909)
   • Assessed By: Bell, Thursday; Last Assessed: 08 Oct 2024

**Plan**

Plan: I had a long discussion with Owen about his options. At this point I do not think that any hardware removal
would be of any specific benefit to him. I think the hyperesthesia he feels at his traumatic wound may be ongoing
for the rest of his life or may resolve with time. I do not think surgery will help this. Also, he does not have pain at
his hardware site specifically and I stated that I do not think taking his nail out would necessarily decrease any
pain that he experiences with weather changes or in winter. I did explain to him that despite this, some patients
insist on a heart removal and they do feel some resolution of their symptoms. At this point he would like to hold off
on surgery. I do recommend a lidocaine patch to the area of his hyperesthesia which may help with some of his
symptoms. Follow-up with us on a as needed basis

                    ❀ Allscripts·              2 of 3              10/10/24 9:53:52 AM

Simms, Owen Oliver                    A# 044847829                        Page 3 of 4

10-10-2024 9:56                  Datavant              Fax Id: 61518                    D 5/6
                        *Patient:*      OWEN OLIVER SIMMS
                        *Encounter:*    10/08/2024 9:00AM              *MRN:*      M001491956

            Weight Bearing Status: WBAT.
            Work Status: Not Applicable.

**Surgical History**
        1   History of Brain surgery
        2   History of Leg surgery

**Active Problems**
        1   Leg pain (M79.606)

**Past Medical History**
        1   History of Epilepsy (G40.909)
        2   History of gunshot wound (Z87.828)

**Signatures**

Electronically signed by : Jeffrey Daoust, PA; Oct  8 2024 10.58AM Eastern Standard Time (Author)

                    ℞ Allscripts·              3 of 3              10/10/24 9:53:52 AM

Simms, Owen Oliver          A# 044847829                    Page 4 of 4

10-10-2024 9:56          Datavant        Fax Id: 61518                    D 6/6
                    ERIE COUNTY MEDICAL CENTER
                       HEALTHCARE NETWORK

462 Grider Street                                    Buffalo, New York 14215
                    DEPARTMENT OF IMAGING SERVICES


PT NAME: SIMMS,OWEN OLIVER          Pt Type: REG CLI    Pt Location: ORTHO
MRN: M001491956                     Attending: DYSKIN,EVGENY A MD, PHD, FAAOS
DOB: 08/19/1974    Sex: M            Referring: DYSKIN, EVGENY A MD, PHD, FAAOS
Service Date: 10/08/24 Time: 0956   Primary Care: BAILEY,BRENDA MD, (RF)
Requisition No: 24-0130928          Account Number: V00007780397
Procedures:                         REPORT NO: 1008-0276
1008-0137 RAD/XR Tib Fib Right AP LAT


PROCEDURE: XR Tib Fib Right AP LAT

CLINICAL INDICATIONS: Pain

TECHNIQUE: Frontal and lateral views of the right tibia and fibula were performed.

COMPARISON: None.

FINDINGS/IMPRESSION:

Status post cephalomedullary nail placement within the tibia. No evidence of hardware complication or
other acute abnormality. Fracture deformity involving the distal tibia with near-anatomic alignment and
exuberant osseous remodeling. Comminuted fracture of the distal fibula, with well-corticated margins
adjacent to a diastatic fracture line. Multiple radiopaque metallic foreign bodies are noted adjacent to the
fractures. Mild to moderate tibiotalar degenerative changes.

Films reviewed and dictated by:    DANIEL C HOWARD DO  10/08/24 1424
Signed by:                         <Electronically signed by DANIEL C HOWARD DO in OV>
Sign date / time:                  10/08/24 1425


10/08/24 1424 XXX

Copies To: BAILEY,BRENDA MD, (RF); DYSKIN,EVGENY A MD, PHD, FAAOS
   Printed:

| Simms, Owen | A# 044847829 | Page 1 of 4 |
|---|---|---|
| Oct/1/2024 9:57:41 AM | UMMC HIM 585344746 | 3/6 |

# ROCHESTER
## REGIONAL HEALTH

Simms, Owen
MRN: 42248882, DOB: 8/19/1974, Legal Sex: M
Adm: 9/27/2024, D/C: 9/27/2024

### 09/27/2024 CT SCAN in UMMC Radiology CT

Imaging

CT head without IV contrast [550271189] (Final result)                    Status: Completed
Electronically signed by: Root, Wendy on 08/21/24 1411
This order may be acted on in another encounter.
Ordering user: Root, Wendy 08/21/24 1411
Ordering mode: Standard                                  Authorized by: Schrauger, Annabelle, NP
Frequency: Routine PRN 09/27/24 0833 - 1 occurrence
Quantity: 1                                              Class: RRH
Indications of use: Other, Unlisted Indication - See Comments   Lab status: Final result
Diagnoses                                                Instance released by: Wood, Cheryl L 8/27/2024 8:33 AM
Headache syndrome [G44.89]

Questionnaire

| Question | Answer |
|---|---|
| Release to patient | Immediate |
| Additional Comments | see dx |

Order comments: See dx

Screening Form

General Information

Patient Name: Simms, Owen          MRN: 42248882
Date of Birth: 8/19/1974           Home Phone: 585-343-8851
Legal Sex: Male

| Procedure | Ordering Provider | Authorizing Provider | Appointment Information |
|---|---|---|---|
| CT HEAD WITHOUT IV CONTRAST | | Schrauger, Annabelle, NP , 585-344-6651 | 9/27/2024 9:00 AM UMMC CT 84 A UMMC RADIOLOGY CT |

Screening Form Questions

No questions have been answered for this form.

_____          _____          _____          _____
Patient Signature         Date           Witness Signature           Date

Begin Exam Questions

| | Answer | Comment |
|---|---|---|
| Was the patient's name and DOB verified? | Yes | |
| Who verified the patient's identity? | DAWSON-DECKER, DARLA | |
| Is there a valid script or electronic order? | Yes | |
| Does the patient validate/understand the procedure? | Yes | |
| Is the patient pediatric (18 years or younger)? | No | |
| What is the patient's age? | | |
| Did you verify the patient's weight? | No | |
| Does the patient have any pumps or monitors (insulin, glucose)? If yes, follow procedures to have device removed prior to imaging. | No | |
| How is the patient positioned in the CT scanner? | Head first Supine | |

End Exam Questions

| | Answer | Comment |
|---|---|---|

Page 1

Printed on 10/1/24 9:41 AM

Simms, Owen
Oct/1/2024 9:57:41 AM

A# 044847829
UMMC HIM 585344746

Page 2 of 4
4/6

# ROCHESTER REGIONAL HEALTH

Simms, Owen
MRN: 42248662, DOB: 8/19/1974, Legal Sex: M
Adm: 9/27/2024, D/C: 9/27/2024

## 09/27/2024 CT SCAN in UMMC Radiology CT (continued)

### Imaging (continued)

| | |
|---|---|
| # of images? | 423 |
| Technique and Slice | |
| Student Tech | |
| Institutional billing flag? (ie: Demay) | |
| Patient shielded? | |

**CT head without IV contrast [550271189]**                     Resulted: 09/27/24 1711, Result status: Final result

Order status: Completed
Filed by: Edl, Rad Results in 09/27/24 1713
Accession number: 49717361
Narrative:
HISTORY: Headache syndrome.

Resulted by: Iqbal, Arbab, MD
Performed: 09/27/24 0903 - 09/27/24 0908
Resulting lab: ROCHESTER GENERAL IMAGING

TECHNIQUE: Axial images were obtained through the head without intravenous contrast administration. One or more of the following dose reduction techniques were used: automated exposure control, adjustment of the mA and/or kV according to patient size,
use of iterative reconstruction technique.

COMPARISON: None.

FINDINGS: Status post right frontal craniotomy. There is underlying encephalomalacia and gliosis in the right frontal lobe likely sequela of prior insult. There is mild generalized cerebral volume loss. There is no evidence of acute intracranial hemorrhage or CT evidence of acute territorial infarct. There is no significant mass effect or midline shift. There is mild mucosal thickening of the bilateral ethmoid and left maxillary sinus. The bilateral mastoid air cells are clear.

IMPRESSION:
1. Right frontal craniotomy with underlying encephalomalacia and gliosis in the right frontal lobe, likely sequela of prior insult. Recommend comparison with prior outside studies if available to ensure stability. If none are available, MRI of the brain would be useful for additional evaluation.
2. No acute intracranial hemorrhage or CT evidence of acute territorial infarct.

Corrected by: Amy Boccardo on 9/27/2024 11:01 AM

Signed by Attending: Arbab Iqbal, MD on 9/27/2024 5:11 PM
Acknowledged by: Nazarevych, Taras, PA-C on 09/30/24 1223

### Testing Performed By

| Lab: Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 16 - RGIMG | ROCHESTER GENERAL IMAGING | Unknown | Unknown | 02/17/11 0832 - Present |

Resulted: 09/27/24 1101, Result status: Preliminary result

**CT head without IV contrast [550271189]**

Order status: Completed
Filed by: Edl, Rad Results in 09/27/24 1101
Accession number: 49717361
Narrative:
HISTORY: Headache syndrome.

Resulted by: Iqbal, Arbab, MD
Performed: 09/27/24 0903 - 09/27/24 0908
Resulting lab: ROCHESTER GENERAL IMAGING

TECHNIQUE: Axial images were obtained through the head without intravenous contrast administration. One or more of the following dose reduction techniques were used: automated exposure control, adjustment of the mA and/or kV according to patient size,
use of iterative reconstruction technique.

COMPARISON: None.

FINDINGS: Status post right frontal craniotomy. There is underlying encephalomalacia and gliosis in the right frontal lobe likely sequela of prior insult. There is mild generalized cerebral volume loss. There is no evidence of acute intracranial hemorrhage or CT evidence of acute territorial infarct. There is no significant mass effect or midline shift. There is mild mucosal thickening of the bilateral ethmoid and left maxillary sinus. The bilateral mastoid air cells are clear,

| Simms, Owen | A# 044847829 | Page 3 of 4 |
|---|---|---|
| Oct/1/2024 9:57:41 AM | UMMC HIM 585344746 | 5/6 |

# ROCHESTER
## REGIONAL HEALTH

Simms, Owen
MRN: 42248882, DOB: 8/19/1974, Legal Sex: M
Adm: 9/27/2024, D/C: 9/27/2024

### 09/27/2024 - CT SCAN in UMMC Radiology CT (continued)

**Imaging (continued)**

IMPRESSION:
1. Right frontal craniotomy with underlying encephalomalacia and gliosis in the right frontal lobe, likely sequela of prior insult. Recommend comparison with prior outside studies if available to ensure stability. If none are available, MRI of the brain would be useful for additional evaluation.
2. No acute intracranial hemorrhage or CT evidence of acute territorial infarct.

Corrected by: Amy Boccardo on 9/27/2024 11:01 AM

This is a preliminary report and may contain typographical or content errors. This report has NOT been corrected or finalized. Please use your discretion when acting upon the content of this report.

**Reviewed by**
Nazarevych, Taras, PA-C on 09/30/24 1223

**Testing Performed By**

| Lab · Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 16 - RGIMG | ROCHESTER GENERAL IMAGING | Unknown | Unknown | 02/17/11 0832 - Present |

CT head without IV contrast [550271189]          Resulted: 09/27/24 1058, Result status: In process
Order status: Completed                          Resulted by: Iqbal, Arbab, MD
Filed by: Edi, Rad Results in 09/27/24 1058       Performed: 09/27/24 0903 - 09/27/24 0908
Accession number: 49717361                        Resulting lab: ROCHESTER GENERAL IMAGING

**Reviewed by**
Nazarevych, Taras, PA-C on 09/30/24 1223

**Testing Performed By**

| Lab · Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 16 - RGIMG | ROCHESTER GENERAL IMAGING | Unknown | Unknown | 02/17/11 0832 - Present |

CT head without IV contrast [550271189]          Resulted: 09/27/24 0903, Result status: In process
Order status: Completed                          Resulted by: Iqbal, Arbab, MD
Filed by: Dawson-Decker, Darla 09/27/24 0903      Performed: 09/27/24 0903 - 09/27/24 0908
Accession number: 49717361                        Resulting lab: ROCHESTER GENERAL IMAGING

**Reviewed by**
Nazarevych, Taras, PA-C on 09/30/24 1223

**Testing Performed By**

| Lab · Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 16 - RGIMG | ROCHESTER GENERAL IMAGING | Unknown | Unknown | 02/17/11 0832 - Present |

**Indications**
Headache syndrome [G44.89 (ICD-10-CM)]

**Signed**
Electronically signed by Iqbal, Arbab, MD on 9/27/24 at 1711 EDT

**All Reviewers List**
Nazarevych, Taras, PA-C on 9/30/2024 12:23

Printed on 10/1/24  9:41 AM                                                           Page 3

Simms, Owen
Oct/1/2024 9:57:41 AM

A# 044847829
UMMC HIM 585344746

Page 4 of 4
6/6

# ROCHESTER
## REGIONAL HEALTH

Simms, Owen
MRN: 42248862, DOB: 8/19/1974, Legal Sex: M
Adm: 9/27/2024, D/C: 9/27/2024

09/27/2024 CT SCAN in UMMC Radiology CT (continued)

Imaging (continued)

# END OF REPORT

Simms, Owen Oliver      A# 044847829      Page 35 of 36

## STATE OF NEW YORK – DEPARTMENT OF CORRECTIONS & COMMUNITY SUPERVISION
### PHYSICAL EXAM

22R0482 SIMMS, OWEN
09R2821051R ULSTER REC
09/22/2022 NEW YORK
DOB# 08/19/1974

DOB: _____     Facility: _____

Date of Exam: _____    Exam: ☑ Initial ☐ Update

In EP since 08/17/21     sentenced 4 years

| Vision | Uncorrected | Corrected | Gross Hearing | Normal | Abnormal | Hearing Aid |
|--------|-------------|-----------|---------------|--------|----------|-------------|
| Right | | 20/30 | Right | ✓ | | |
| Left | | 20/30 | Left | | | |

**Vital Signs**
| | |
|---|---|
| Temp: | 98.0 |
| Pulse: | 84 |
| Resp | 16 |
| BP: | 143/84 |
| O2 Sat | |
| HT: | 5'11 |
| WT: | 170 |
| Initials | MI |

Current Complaint(s): ☐ None ☐ Yes (Specify: Use Form 3105 for additional information)
47 y.o. ♂ seizure disorder since 2019 s/p Head
injury (Fleshville) open head surgery, last seizure 2019

*Any abnormal finding or declination of examination **must** be documented. All off meds incl. declinations **must** be accompanied by Form 3195 Refusal of Medical Examination and/or Treatment* s/p GSW to RLE 8/23/10 s/p ORIF T16-T16.

| Examination | Normal | Abnormal | Declined* |
|-------------|--------|----------|-----------|
| Behavior | ✓ | | |
| Speech | ✓ | | |
| Gait | ✓ | | |
| Head | ✓ | | |
| Eyes | | ✓ WWA hos glasses | |
| Ears | ✓ | | |
| Nose | ✓ | | |
| Throat | ✓ | | |
| Neck | ✓ | | |
| Breasts | ✓ | | |
| Lungs | ✓ | | |
| Chest | ✓ | | |
| Heart | ✓ | | |
| Lymph Nodes | ✓ | | |
| Musculoskeletal | ✓ | | |
| Spine | ✓ | | |
| Neurologic | ✓ | | |
| Extremities | ✓ | | |
| Abdomen | ✓ | | |
| Skin | | tattoos | |
| Groin | ✓ | | |
| Rectal | | | declined |
| Genitalia | ✓ | | |
| Females: LMP | N/A | | |

stokes has metal rod and plates

**Abnormal Finding(s)/Diagnosis:**
Declined HEV test

**General Appearance:** WN
NKDA

**Physical Limitation(s):** NTB ✓
TDAP 1/2 CC IM ✓
Flu Vaccine 0.5cc IM ✓

Need reception EKG ✓

☐ Check here if additional information is noted on AHR Form 3105 (AHR Progress Note)

Hepatitis C Screening Offered? ☐ Yes ☐ No ☑ Unknown    ☑ Medical Classification Level ☐ 1 ☑ 2 ☐ 3

Provider Signature _____   8011   3/23/22   10:00 AM
           Provider #      Date      Time

**This information is protected under PHL Law 27F prohibiting further disclosure. A general authorization is not sufficient for release**

Form 3101B (12/16)    Distribution: Original (white)--History & Physical Tab    Copy (yellow)---Dental Record

# DIAGNOSTIC X-RAY SERVICE - BUFFALO
## 4242 RIDGE LEA RD SUITE 1A

### AMHERST, NY 14226
### Phone: (716)362-8775

| PATIENT INFORMATION | |
|---|---|
| Patient Name:   SIMMS, OWEN | A# 044 847 829 |
| Patient ID:   RAM36117 | |
| Birth Date: 8/19/1974          Sex:   M | |
| **REFERRER INFORMATION** | |
| Referring Facility:  BUFFALO DETENTION CENTER INS | Unit/Room: |
| Referring Physician:   MONTALVO, ABELARDO DR. | |

**EXAM INFORMATION**                                            *Confirmation #:*

RAM2147759

**Exam Performed:**   XRAY RIGHT TIBIA/FIBULA (2 VIEWS)

**Date of Service:**    *9/4/2024 6:02:49 PM*

*Symptom(s):   PAIN*

Performing Technologist: BELLANCA, MELISSA RT

## DIAGNOSTIC REPORT:

Portable frontal and lateral views of the right lower leg reveal some mild narrowing at the bony relationships. The ankle mortise is intact. There is an intramedullary rod extending through the length of the tibia secured proximally and distally by transverse screws for treatment of fracture of the distal diaphyseal portion of the tibia which appears of healing. There is also a comminuted fracture over the distal diaphyseal portions of the fibular area with advanced healing although fracture lines remain evident. No acute fracture dislocation is evident. There is some punctate heavy metallic type density in the soft tissues about the lower leg some this could represent shrapnel artifact.

## IMPRESSION:

*Moderate bony degenerative changes. Internally fixated distal tibial diaphyseal fracture with hardware well placed in stable with healing. Progression of bony union over a complex comminuted distal fibular fracture but no acute fracture dislocation is evident. However if symptomatology persists short term follow-up studies for comparison may be helpful.*

*No prior studies are available for comparison at this institution.*

Thank you for this kind referral.
Sincerely,

*Electronically Signed By:    PAUL, DAVID MD*                    *Date/Time Read:  9/4/2024 7:07:50 PM*

Scan to access images for this study

# DIAGNOSTIC X-RAY SERVICE - BUFFALO
## 4242 RIDGE LEA RD SUITE 1A

### AMHERST, NY 14226
### Phone: (716)362-8775

| PATIENT INFORMATION | |
|---|---|
| Patient Name:  SIMMS, OWEN | A# 044 847 829 |
| Patient ID:  RAM36117 | |
| Birth Date:  8/19/1974          Sex:   M | |
| **REFERRER INFORMATION** | |
| Referring Facility:   BUFFALO DETENTION CENTER INS | Unit/Room: |
| Referring Physician:     MONTALVO, ABELARDO DR. | |

## EXAM INFORMATION

*Confirmation #:*

RAM2147759

**Exam Performed:**   XRAY RIGHT TIBIA/FIBULA (2 VIEWS)

**Date of Service:**     *9/4/2024 6:02:49 PM*

*Symptom(s):*   *PAIN*

Performing Technologist: BELLANCA, MELISSA RT



%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Owen Simms<br>A#044-847-829 | Joseph Freden in his official capacity as Officer-in-Charge of the Buffalo Federal Detention Facility |

**(b)** County of Residence of First Listed Plaintiff **Genesee County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Genesee County**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Pro Se

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☒ 463 Habeas Corpus - Alien Detainee<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 2241
Brief description of cause:
Ongoing detention violates due process

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE
08/29/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

| Print | Save As... | Export as FDF | Retrieve FDF File | Reset |

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

PRESS FIRMLY TO SEAL

PRIORITY®
MAIL

(restrictions apply).*

■ USPS Tracking® service included for domestic and many international destinations.

Buffalo Federal Detention Facility

FROM: OWEN SIMMS
A# 044 847 829
Buffalo Federal Detention Fac.
4250 Federal Drive
Batavia, N.Y
14020

USDC-WDNY
SEP - 4 2025
ROCHESTER

Retail

US POSTAGE PAID
$0.00

Origin: 14020
09/03/25
3505200020-2

PRIORITY MAIL®

0 Lb 13.60 Oz       RDC 03

C002

EXPECTED DELIVERY DAY:  09/05/25

SHIP
TO:  100 STATE ST
ROCHESTER NY 14614-1350

USPS TRACKING® #

9505 5143 7087 5246 5744 89

UNITED STATES
POSTAL SERVICE.

P

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER
POUCH

TO:
United States District Court
United States Court House
100 States Street
Rochester New York
14614

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.