UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

OWEN SIMMS,

Petitioner,

v.

PAMELA BONDI, *Acting Attorney General of the United States, et al.*,

Respondents.

**DECISION AND ORDER**

25-CV-06458-MAV

## INTRODUCTION

Petitioner Owen Simms, a citizen of Jamaica, is a civil immigration detainee who has been in Respondents' custody since March 22, 2024. ECF No. 1 at ¶¶ 1, 15. Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on September 4, 2025. Respondents filed a motion to dismiss, arguing that the petition was premature under *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. 7. The Court denied the motion and directed Respondents to file a return to the petition. ECF No. 11. Respondents thereafter answered, ECF No. 12, and Petitioner filed two replies, ECF Nos. 14, 15.

For the reasons that follow, the petition is granted, and Respondents have 48 hours from the date of this Decision and Order to release Petitioner on an order of supervision with appropriate conditions.

## BACKGROUND

Building upon the background set forth in the Court's Decision and Order denying Respondents' motion to dismiss, ECF No. 11 at 1–2, the following facts are relevant to resolving Petitioner's substantive claim that his removal is no longer "reasonably foreseeable" under *Zadvydas* and, therefore, that he is entitled to release.

On January 16, 2019, Respondents reinstated the prior order of removal against Petitioner, subjecting him to detention pursuant to 8 U.S.C. § 1231. ECF No. 12-1 at ¶ 9; *see* 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 545–47 (2021) (holding a noncitizen subject to a reinstated order of removal who is in withholding-only proceedings is detained pursuant to 8 U.S.C. § 1231). Petitioner was placed in "withholding-only" proceedings and his applications for relief from removal were denied. ECF No. 12-1 at ¶ 10. After remand by the Second Circuit Court of Appeals on Petitioner's petition for review challenging the denial of relief from removal, an immigration judge ultimately granted Petitioner's application for withholding of removal to Jamaica on January 3, 2025. ECF No. 12-1 at ¶¶ 10–16 (noting also that the Department of Homeland

Security's ("DHS") appeal of that grant to the Board of Immigration Appeals ("BIA") was dismissed).

Petitioner has been detained pursuant to § 1231 since March 22, 2024—for approximately 30 months as of this Decision and Order. Respondents cannot remove Petitioner to his home country of Jamaica, and the question before the Court is whether his removal to another country is, at this stage, reasonably foreseeable.

While being held at the Buffalo Federal Detention Facility ("BFDF"), Petitioner filed the instant habeas petition in this Court, *pro se*, on September 4, 2025, vesting this Court with continuing jurisdiction to decide the issues raised in the petition regardless of Respondents' future transfers of Petitioner to other detention facilities. ECF No. 1; *see Rumsfeld v. Padilla*, 542 U.S. 426, 443–47 (2004); *Ex Parte Endo*, 323 U.S. 283, 307 (1944) ("Th[e] objective [of habeas relief] may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court.").

After a transfer to the Miami Correctional Facility in Indiana, Petitioner filed a second *pro se* habeas petition on March 26, 2026, in the United States District Court for the Northern District of Indiana, which also raised, *inter alia*, a *Zadvydas* claim. ECF No. 12-2 at 11. On May 11, 2026, the Northern District of Indiana denied his second petition without reference to Petitioner's already pending habeas matter before this Court.[1] *Id.* at 66–70. The Court will discuss the Northern District of

[1] Respondents' exhibit filed in this matter of *pro se* Petitioner's second petition shows that Petitioner did not identify to the Northern District of Indiana that he already had a § 2241 petition pending in this district. *See* ECF No. 12-2 at 11–18. This Court does not have visibility into the response to Petitioner's second petition filed by the named respondent in that Northern District of Indiana case.

Indiana's order below and here notes that Respondents offered the following evidence in opposition to Petitioner's second petition:

> The respondent filed an affidavit in which an Immigration and Customs Enforcement (ICE) official attested that ICE is actively working to find a country to accept Simms for removal, Specifically, on April 7, 2026, ICE submitted requests to the Dominican Republic and Barbados, and on April 14, 2026, ICE submitted a request to Canada. Though the Dominican Republic declined the request, ICE continues to await responses from Barbados and Canada and is also evaluating other options.

ECF No. 12-1 at 67 (citations omitted) (Northern District of Indiana's Opinion and Order, included in Respondents' exhibits to their answer to the instant, first-filed petition).

Returning to filings principally made in the first-filed petition before this Court, on May 28, 2026, a Deportation Officer employed by DHS, Immigration and Customs Enforcement ("ICE"), who "reviewed files and information maintained by [her] agency pertaining to Petitioner" made the following declaration in support of Respondents' efforts to remove Petitioner:

> ICE has been working to remove Petitioner to a third country, besides Jamaica. These countries include Canada, Panama, and the Bahamas. The Bahamas has advised that they have transmitted the request for travel documents for Petitioner's removal to their embassy. More recently, ICE has requested travel documents from Honduras and Belize as well. The Honduran government denied the request but the Consulate of Belize in Chicago advised that they would forward the request to the Embassy of Belize. Thus, at present, four countries have outstanding requests for travel documents for Petitioner's removal, two

---

That said, it appears that the government, at least in the instant, first-filed petition, was able to readily obtain information about other habeas case(s) tied to this particular petitioner. *See* ECF No. 12-1 at ¶¶ 1–3, 18 (declaration by ICE Deportation Officer, declaring that the basis for her submission was "that [she] reviewed files and information maintained by [her] agency pertaining to Petitioner," and explicitly acknowledging Petitioner's second habeas petition filed and decided in the Northern District of Indiana).

> of which have confirmed that the requests have been forwarded to the embassy for a decision.

ECF No. 12-1 at ¶¶ 20–21. The ICE officer also noted that, on January 14, 2026, and on April 8, 2026, "Petitioner's custody was reviewed by ICE[,] and ICE determined that his detention should continue because his removal was likely to occur." *Id.* at ¶¶ 17, 19. Respondents have not requested to supplement the record with any progress on facilitating Petitioner's removal since their May 28 submission.

## LEGAL STANDARD

"A district court may grant a writ of habeas corpus [under 28 U.S.C. § 2241] when a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Kapoor v. DeMarco*, 132 F.4th 595, 606 (2d Cir.) (quoting 28 U.S.C. § 2241(c)(3)), *cert. denied*, 146 S. Ct. 325 (2025). In habeas proceedings under § 2241, "the petitioner . . . bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011).

## DISCUSSION

### I. Jurisdiction

28 U.S.C. § 2241(c)(3) authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to "discretionary judgment,"

"action," or "decision" by the Attorney General with respect to either detention or removal. *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575, at *1 (W.D.N.Y. Nov. 25, 2025), *aff'd sub nom. Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018)); *see Zadvydas*, 533 U.S. at 688 (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases); *see also Mehrali v. Ball*, No. 26-CV-00809-JON, 2026 WL 2191402, at *3 (W.D.N.Y. July 30, 2026) (Newman, J., Senior Circuit Judge, sitting by designation) (finding that the Second Circuit's recent interpretation of 8 U.S.C. § 1252(b)(9) in *Mahdawi v. Trump*, 183 F.4th 103 (2d Cir. 2026), did not present a jurisdictional bar to a *Zadvydas* claim raised in a § 2241 habeas petition); *Sharifipour v. U.S. Dep't of Homeland Sec., et al.*, No. 26-CV-457-RCW, 2026 WL 1998824, at *3 (W.D.N.Y. July 10, 2026) (Wesley, J., Senior Circuit Judge, sitting by designation) (the operative petition "raises only a single *Zadvydas* claim: a claim that the Government lacks the constitutional and statutory authority to detain him, not a challenge to the Government's execution of his removal order. It is clear that district courts have jurisdiction over such a claim." (collecting cases)).

"Respondents do not dispute that this Court has subject matter jurisdiction over Petitioner's challenge to his continued detention in custody." ECF No. 12 at ¶ 1.

***A. The Northern District of Indiana's Intervening Opinion and Order***

In Respondents' answer to this first-filed petition, they affirmatively raise the fact that, on May 11, 2026, the Northern District of Indiana denied Petitioner any

relief under *Zadvydas* and otherwise on his second petition—doing so not to argue that the instant petition is moot or that this Court does not have jurisdiction over the pending petition, but instead in support of their argument that this Court should likewise deny the instant petition on the merits. *See* ECF No. 12 at ¶ 8; ECF No. 12-3 at 1–4 (Respondents' memorandum of law in support of their answer to the first-filed petition, stating for example, that the Northern District of Indiana "highlighted th[e] salient fact" that the mere passage of time is insufficient to warrant relief under *Zadvydas*, and "accordingly dismissed the petition *that mirrored this one,*" and, as to the proposed dismissal of the remainder of claims raised, that "[a] sister district court already reached this conclusion, and *this Court should hold likewise and deny the Petition in its entirety*." (emphases added)).

In its effort to ensure that this Court is able to rule on the first-filed and pending petition, the Court must respectfully question the propriety and potential impact of another district court having issued an order deciding issues in a second petition that, as Respondents themselves characterize, "mirror[]" those first raised in this Court.

"Where two civil actions involving the same parties and issues are pending in federal court, 'the court with prior jurisdiction over the common subject matter should resolve all issues presented in related actions.'" *Vetcher v. Sessions*, No. 3:18-CV-1724-K (BH), 2018 WL 4006812, at *1 (N.D. Tex. July 12, 2018), *report and recommendation adopted*, No. 3:18-CV-1724-K, 2018 WL 4002533 (N.D. Tex. Aug. 21, 2018) (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730

(5th Cir. 1985). "The 'first-filed' rule 'is grounded in principles of comity and sound judicial administration.'" *Id.* (quoting *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). "The rule is meant 'to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Id.* (quoting *Save Power Ltd.*, 121 F.3d at 950).

"Under these circumstances, the second court should stay, dismiss, or transfer the second action." *Id.* (citing *West Gulf*, 751 F.2d at 730); *see also Cortez Benavides v. U.S. Dep't of Homeland Sec.*, No. 1:26-CV-1438, 2026 WL 1246190, at *1 (W.D. Mich. May 6, 2026) (dismissing a duplicate habeas petition, noting *inter alia*, "as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit." (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. Cal. Dep't of Health Serv.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953-54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997)). "The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the 'comprehensive disposition of litigation,' and protect parties from 'the vexation of concurrent litigation over the same subject matter.'" *Cortez Benavides*, 2026 WL 1246190, at *1 (first quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), then *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)).

"Consistent with these 'first-filed' principles, habeas petitions under 28 U.S.C. § 2241 have been dismissed as duplicative of other pending petitions." *Vetcher,* 2018 WL 4006812 at *2 ("Because the habeas petition in that [pending] case was filed before the initial filing in the present case, this case should be dismissed.") (citing *Zhao v. Holder*, No. H-10-0328, 2010 WL 517897 (S.D. Tex. Feb. 10, 2010) (§ 2241 petition challenging immigration detention dismissed as duplicative of pending § 2241 petition) and *Fertilien v. Mukasey*, No. 09-123, 2009 WL 1953176 (W.D. La. July 7, 2009) (same)); *see also Phillips v. Robinson,* No. 5:12CV2323, 2013 WL 3990756, at *1 (N.D. Ohio Aug. 2, 2013) (dismissing second-in-time petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254); *O'Laughlin v. Kallis*, No. 21-CV-851 (DSD/DTS), 2021 WL 2269967, at *4 (D. Minn. Apr. 30, 2021), *report and recommendation adopted*, No. CV 21-851 (DSD/DTS), 2021 WL 2268881 (D. Minn. June 3, 2021), *aff'd*, No. 21-2328, 2021 WL 6197337 (8th Cir. July 14, 2021) ("[B]ased on the foregoing explanation, this Court hereby recommends that O'Laughlin's petition be dismissed without prejudice under § 2244(a) because it is an exact replica of the 2018 petition from the Western District of Missouri that is currently pending on appeal before the Eighth Circuit."); 28 U.S.C. § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.").

Accordingly, it appears that Petitioner's second-filed petition in Indiana should have been dismissed, or at least stayed or transferred to this Court. *See, e.g.*, *Vetcher,* 2018 WL 4006812, at *1; 28 U.S.C. § 2244(b)(1). This Court, as the court with prior

jurisdiction over the common subject matter in Petitioner's two § 2241 petitions, was and is the proper Court to resolve all issues presented in the related actions. *See Vetcher*, 2018 WL 4006812, at *1. The Court does not view the Northern District of Indiana's Opinion and Order as divesting or precluding this Court's first-in-time jurisdiction over the issues raised in Petitioner's habeas petition(s), and the rulings on Petitioner's second-filed petition do not control this Court's rulings on Petitioner's first-filed petition. Nor do Respondents argue as such. *See* ECF No. 12 at ¶ 8; ECF No. 12-3 at 1–4 (bringing the Court's attention to the Northern District of Indiana's Opinion and Order to argue that this Court "should [] likewise" deny the instant, pending petition).

The Court also finds that the instant evaluation of Petitioner's *Zadvydas* claim involves an evolving set of facts since the Northern District of Indiana's decision which warrants substantive consideration.

## II. *Zadvydas* Framework

Under the Immigration and Nationality Act, a noncitizen who is "ordered removed" must be detained during a 90-day "removal period." 8 U.S.C. §§ 1231(a)(1)(A), (2)(A). Section 1231 defines the "removal period" as beginning "on the latest of" three dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal . . . , the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

*Id.* at § 1231(a)(1)(B). Section 1231 also authorizes the government to detain certain individuals beyond the 90-day removal period. *See id.* at § 1231(a)(6). Those subject to further detention include noncitizens who are "removable as the result of . . . violations of criminal law" or else are "determined by the Attorney General to be a risk to the community[ ] or to be unlikely to comply with the order of removal." *Sharifipour,* 2026 WL 1998824, at *3 (quotation omitted); *see* 8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) "places no explicit temporal limit on [the] detention" of those removable noncitizens who may be detained beyond the 90-day removal period. *Black v. Decker*, 103 F.4th 133, 143 n.13 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026). But in *Zadvydas*, the Supreme Court "read an implicit limitation into" § 1231(a)(6), holding that the section, "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States." 533 U.S. at 689. The Court held that the statute did not "permit indefinite detention" and interpreting it to do so "would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause—particularly because removal proceedings are "civil, not criminal." *Id.* at 689–90.

"Under *Zadvydas,* because noncitizens may be detained under section 1231(a)(6) for only the period necessary to allow the government to affect their removal, they may not be detained once removal is no longer 'reasonably foreseeable.'" *Sharifipour,* 2026 WL 1998824, at *4 (quoting *Zadvydas,* 533 U.S. at 699–700). "This

'reasonably foreseeable' standard governs both whether continued detention is statutorily authorized and whether it is constitutional." *Zheng v. Decker*, 618 F. App'x 26, 27 (2d Cir. 2015). "[F]or the sake of uniform administration in the federal courts," the Supreme Court held that a six-month period of detention was "presumptively reasonable." *Zadvydas,* 320 F.3d at 701. After the expiration of that period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to "rebut" that showing with adequate "evidence." *Id.* "If the noncitizen satisfies that initial burden and the government cannot rebut it, 'the court should hold continued detention unreasonable and no longer authorized by statute.'" *Sharifipour,* 2026 WL 1998824, at *4 (quoting *Zadvydas,* 533 U.S. at 699–700).

As relevant to Petitioner's initial burden under *Zadvydas* after expiration of the presumptively reasonable detention period, "[i]n analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its willingness to accept [a noncitizen]." *Lojo v. Garland*, No. 6:22-CV-06340 EAW, 2023 WL 2867791, at *4 (W.D.N.Y. Apr. 10, 2023) (quotation omitted). Further, what constitutes the 'reasonably foreseeable future' will depend on the length of detention. *Id.*; *see Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").

### *A. Petitioner Has Satisfied His Initial Burden*

As explained above, to meet the initial burden under *Zadvydas*, a petitioner must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. That requires the petitioner to "present more than 'mere assertions that removal is unforeseeable.'" *See Callender v. Shanahan*, 281 F. Supp. 3d 428, 434 (S.D.N.Y. 2017) (quoting *Juma v. Mukasey*, No. 09-CV-3122, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009)). Nonetheless, the "good reason to believe" standard is "not a very high bar." *Dong v. Charles*, No. 26-CV-85, 2026 WL 1473790, at *5 (W.D.N.Y. May 26, 2026) (quotation omitted). A petitioner does not need to conclusively demonstrate that there is "no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite"; "something less" is enough. *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (quotation omitted).

Here, Petitioner has been detained pursuant to § 1231 for approximately 30 months—approximately five times the duration that the Supreme Court considers "presumptively reasonable." When Petitioner filed the instant petition in September 2025, he had already been detained for a year and half with no evidence of any removal activities. *See Sharifipour,* 2026 WL 1998824, at *6 ("[C]ourts have held that a showing that the government failed to make *any* progress in deporting a detainee since it 'first took him into custody'—combined with 'the passage of time'—is 'sufficient to meet [the petitioner's] initial burden." (quoting *Senor*, 401 F. Supp. 3d at 430)); *see also Ahmed v. Freden,* 744 F. Supp. 3d 259, 266 (W.D.N.Y. 2024) ("[N]ot

only has there been a substantial passage of time [16 months], there does not appear to be any information before the Court at this time demonstrating that ICE has made progress in repatriating Petitioner."). Despite knowing in January 2025 that Petitioner cannot be removed to Jamaica, there is no evidence in the record of Respondents taking any concrete action to attempt to remove him to another country until April 2026—after Petitioner had filed not one, but two habeas petitions. *See Rodriguez Romero v. Ladwig*, 827 F. Supp. 3d 779, 806 (M.D. La. 2026) ("While Respondents assert that Mexico has reversed its policy and is now accepting deportees over the age of 60, they clarified for the Court that the policy of refusing deportees over 60 was only in place for about a month, several months after Petitioners were detained—that is, Respondents had custody of Petitioners for months before the policy was implemented and failed to remove Petitioners in that time.").

*Zadvydas* instructs that what counts as the reasonably foreseeable future diminishes as detention continues; in effect, it becomes closer in time. *D'Alessandro v. Mukasey*, 628 F. Supp. 2d 368, 406 (W.D.N.Y. 2009) (ordering petitioner be released after 16 months of detention pursuant to § 1231); *see Zadvydas*, 533 U.S. at 701 ("And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink."). In short, Petitioner has satisfied his burden of demonstrating good reason to believe that there is no significant likelihood of removal in the foreseeable future.

### *B. Respondents Have Failed to Rebut Petitioner's Showing*

The burden therefore shifts to Respondents to "rebut" Petitioner's showing. Respondents' May 28 answer alleges that "ICE is presently working to remove [Petitioner] to a number of countries." ECF No. 12 at ¶ 7. In April 2026, after already having detained Petitioner for more than two years, ICE "submitted requests" to the Dominican Republic, Barbados, and Canada. *See* ECF No. 12-1 at 67 (citations omitted). Prior to the Northern District of Indiana's decision, the Dominican Republic had declined ICE's request for travel documents, *id.*, and it appears that Barbados has as well, ECF No. 12-1 at ¶¶ 20–21 (not listing Barbados as a potential country for removal). Respondents requested travel documents from Honduras which it too denied. *Id.* Respondents' April 2026 request to Canada appears to remain pending, but Respondents offer no explanation about the status of that request or why it remains outstanding. *See id.* Respondents' answer asserts that they also have pending requests for travel documents to Panama, the Bahamas, and Belize, and that the requests to Belize and Bahamas have been forwarded to the respective embassies. *Id.* Respondents have provided no dates of when the bulk of these activities occurred, nor any expected timelines for resolution, any removal trends to their chosen target countries, nor any reasons why three separate countries declined to provide travel documents upon their request.

*Zadvydas* specifically declined to accept that continued detention is lawful as long as "'good faith efforts to effectuate . . . deportation continue.'" *D'Alessandro*, 628 F. Supp. 2d at 406 (quoting *Zadvydas*, 533 U.S. at 701); *see also Escalante v. Noem*,

No. 25-CV-182, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025) (stating the respondents' "conclusory statements that they are taking steps to remove [p]etitioner" were not sufficient to rebut his showing under *Zadvydas*). Especially given the length of time that Petitioner has already been detained, Respondents have not rebutted Petitioner's initial showing that his removal is not reasonably foreseeable.

### *C. The Appropriate Remedy is Release*

As the Supreme Court stated, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. Accordingly here, Petitioner's detention is unlawful as no longer authorized by 8 U.S.C. § 1231, and he must be released. *See, e.g.*, *Sharifipour,* 2026 WL 1998824, at *7 (ordering immediate release of petitioner under *Zadvydas*).

The noncitizen's release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Zadvydas*, 533 U.S. at 700 (noting the noncitizen may "no doubt" be returned to custody for violating a condition of release); *see* 8 U.S.C. 1231(a)(3); 8 C.F.R. §§ 241.4, 241.5. Respondents shall release Petitioner within 48 hours of this Decision and Order pursuant to appropriate terms of supervision.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, ECF No. 1, is GRANTED, and Respondents shall release Petitioner from custody subject to

appropriate conditions. In light of this disposition, the Court declines to reach Petitioner's other claims for habeas relief.

**ORDER**

IT IS HEREBY ORDERED that the petition for writ of habeas corpus, ECF No. 1, is GRANTED; and it is further

ORDERED that Respondents shall RELEASE Petitioner from custody within 48 hours of this Decision and Order on appropriate conditions of supervision; and it is further

ORDEREED that Respondents shall file a status report on or before October 7, 2026, certifying compliance with this Decision and Order; and it is further

ORDERED that the Clerk of Court shall enter judgment in favor of Petitioner and close this case.

SO ORDERED.

Dated: September 30, 2026
Rochester, New York

HON. MEREDITH A. VACCA
UNITED STATES DISTRICT JUDGE